THOMAS DEVER v. J. V. HUMPHREY *et al.*

No. 13,741. (75 Pac. 1037.)

SYLLABUS BY THE COURT.

1. PUBLIC EMPLOYMENT—*Preference to Soldiers and Sailors.*
To obtain the preference given by chapter 186, Laws of 1901 (Gen.
Stat. 1901, §§ 6509–6512), to soldiers and sailors who served in
the war of the rebellion, for appointment to public position or
employment, it must appear on investigation that they possess
equal qualifications for the position or employment with other
available applicants.

2. ———— *Authority to Make Appointments.* Where the legisla-
ture places the authority of making appointments upon officers
and boards, and vests them with a discretion and judgment to
determine who is best qualified to serve the public, the courts
cannot supervise the exercise of such authority, nor control the
discretion and judgment so vested.

3. "VETERANS' PREFERENCE LAW"—*Character and Extent of In-
vestigation.* The character and extent of the investigation under
the "veterans' preference law" is not prescribed by the legisla-
ture, but the appointing power is expected to investigate in good
faith, fairly to consider the qualifications of the applicants, and
honestly to determine who is best fitted to perform the duties of
the place sought.

Error from Geary district court; O. L. MOORE, judge.
Opinion filed March 12, 1904. Affirmed.

*Thomas Dever*, for plaintiff in error.

*James Humphrey*, and *Roark & Roark*, for defendants
in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a proceeding to deter-
mine who was entitled to the office of city attorney of
Junction City. Thomas Dever had been duly chosen
and held the office for several years prior to April,
1903, when he applied to the mayor and council of
the city for reappointment, claiming the benefits of

the "veterans' preference law," being chapter 186, Laws of 1901 (Gen. Stat. 1901, §§ 6509–6512). He was a soldier in the war of the rebellion, received an honorable discharge, is a man of good reputation, who performed and can perform the duties of the office. The mayor investigated his qualifications and capabilities for city attorney, as well as those possessed by J. V. Humphrey, the defendant. As a result, the mayor found and determined that plaintiff was not fully qualified to perform the duties of the office, and that he did not possess equal qualifications with the defendant, who had not been a soldier in the civil war. Upon these considerations the mayor appointed the defendant on May 1, 1903. The appointment was confirmed by the city council, and defendant at once qualified and entered upon the duties of the office. Plaintiff thereupon instituted this *quo warranto* proceeding, claiming that the appointment was illegal, and the court, upon the testimony, found the foregoing facts and concluded that he was not entitled to the office.

The plaintiff's term of office had expired, and the duty to appoint his successor devolved upon the mayor. The defendant, who was conceded to be eligible and qualified for the office, was appointed, and if that appointment is not invalid, the judgment of the trial court must stand. The correctness of the rulings and the validity of the judgment depend upon the constitutionality and the construction of the "veterans' preference law," sections 6509 to 6512, General Statutes of 1901. In *Goodrich v. Mitchell*, post, page 765, 75 Pac. 1034, the constitutionality of the statute was considered, and it was held to be valid.

Plaintiff contends that an ex-soldier or sailor of good reputation who can perform the duties of the office is

entitled to be preferred for appointment, although other applicants may have superior qualifications and be better fitted for the place. The statute, as it appears to us, bases the preference required to be given on the theory of equality of qualifications. (*Goodrich v. Mitchell*, supra.) That rule is expressly declared in the first part of section 1, and must be accepted as controlling, unless it is nullified or modified by other parts of the same section. The law was first enacted in 1886, and section 1 was in these words:

"In grateful recognition of the services, sacrifices and sufferings of persons who served in the army and navy of the United States in the war of the rebellion and have been honorably discharged therefrom, they shall be preferred for appointment and employment to positions in every public department, and upon all public works of the state of Kansas, and of the cities and towns of this state, over other persons of equal qualifications, and the persons thus preferred shall not be disqualified from holding any position in said service on account of his age nor by reason of any physical disability, provided, such age or such disability does not render him incompetent to perform the duties of the position applied for." (Ch. 160, § 1, Laws 1886.)

In 1901 the section was reenacted, and at the end thereof the following was added:

"And when any such ex-soldier or sailor shall apply for appointment to any such position, place, or employment, the officer, board or person whose duty it is or may be to appoint a person to fill such place shall, before appointing any one to such position, make an investigation as to the qualifications of said ex-soldier or sailor for such employment, and if he is a man of good reputation and can perform the duties of said position so applied for by him, said officer, board or person shall appoint said ex-soldier or sailor to such position, place, or employment."

In reenacting the section of the law of 1886, the word ''qualification'' was pluralized and the word ''persons'' was put in the singular form, but it is clear that these changes do not affect the meaning of the statute. It is equally manifest that the legislature did not intend to eliminate the requirement that there shall be equality of qualifications in order to obtain the preference. The clauses added by amendment provide that the appointing power shall make inquiry as to the qualifications of such ex-soldier or sailor applying for a position, and if his reputation is good, and he can perform the duties of the place, it shall be given to him. It is true that the requirement that he should be of equal qualifications was not repeated in the latter part of the section, but obviously the person mentioned, whose qualifications are to be investigated, and who is to be appointed if found qualified and fitted for the position, is the one spoken of in the first part of the section, namely, a person who possesses qualifications equal to those of his competitors. If it had been the purpose to eliminate that feature of the former act, the legislature would hardly have reenacted it in the same terms in the amended section. It will be observed, also, that in the amendment providing for investigation and appointment it refers to ''*such* ex-soldier or sailor''—that is, the one previously referred to, who is of equal qualifications with others available for appointment. One purpose of the amendment was to prevent arbitrary and inconsiderate action in the making of appointments. So, in addition to providing that a veteran of equal qualifications shall be preferred, it prescribes a method of ascertaining the qualifications of those seeking preferential appointments.

The different clauses under consideration, including

the one providing for equality in qualifications, were chosen by the legislature to express its purpose. They are all embraced in the same section, and, if possible, all should be given force and effect. It has been said that "it is a uniform rule of construction that one part of a statute should be construed by other parts of the same statute, so that, if possible, no clause or part shall be treated as superfluous, and especially when the two parts are parts of the same section." (*Wenger v. Taylor*, 39 Kan. 754, 18 Pac. 911.) Following this rule, it must be held that the equality clause was intentionally used by the legislature to express its purpose ; and the purpose, manifestly, was that the party given the preference provided for must possess equal qualifications for the place with those possessed by a competitor. The trial court took this view of the statute and properly applied this interpretation to the facts in the case. In giving its opinion and judgment the court said :

"When a vacancy occurs in the office of city attorney, and an ex-soldier applies for the position, it then becomes the duty of the mayor to make an investigation as to the qualifications of such ex-soldier for the position of city attorney, and if such applicant is found to possess qualifications equal to or superior to other available applicants for the place, and is a man of good reputation, and is not disqualified on account of any physical disability or on account of age to perform the duties of this particular office, then it becomes the duty of the mayor, under his official oath, to appoint such ex-soldier applicant to the place. Any other construction to be placed upon the statute would have the tendency to lessen the efficiency of the public service. A law would certainly be against public policy that would require anything less than the best available qualifications in public officials."

The duty of investigating and determining as to the

qualifications of applicants for public position is placed
.upon the appointing power—in this case upon the
mayor. He did make inquiry and decided that
the plaintiff did not possess equal qualifications for
the office with defendant. That decision, which ap-
pears honestly to have been made, is not open to re-
view or revision by the courts. The legislature has
placed the authority of making appointments mainly
in the administrative officers and boards, and vested
them with a discretion and judgment to determine
who is best qualified to serve the public, and the gen-
eral rule in such cases is that the courts cannot super-
vise the exercise of such authority, nor control the
discretion and judgment so vested. (*State of Kansas,
ex rel. Ross, v. Robinson and others*, 1 Kan. 188; *City of
Emporia v. Gilchrist*, 37 id. 532, 15 Pac. 532; *Martin,
Governor, v. Ingham*, 38 id. 641, 17 Pac. 162; *Insurance
Co. v. Wilder*, 40 id. 561, 20 Pac. 265; *Lynch v. Chase*,
55 id. 357, 40 Pac. 666; *Meffert v. Medical Board*, 66 id.
710, 72 Pac. 247.)

In *Keim v. United States*, 177 U. S. 290, there was
brought before the supreme court of the United States
the action of the pension commissioner in dismissing
a clerk who had been honorably discharged from the
military service by reason of disability received in it.
He was discharged because of a decision by the com-
missioner that his rating was inefficient. He claimed
to be competent and appealed to the courts. It was
held, however, that an appointment to office involves
the exercise of judgment; that the appointing power
must determine the fitness of the applicant, whether
he is qualified to discharge the public duties required
of the officer, and that the courts cannot interfere to
direct or control the power and judgment thus vested.
(*Decatur v. Paulding*, 14 Pet. 497, 10 L. Ed. 559; *United*

*States, ex rel. Dunlap, v. Black,* 128 U. S. 40, 9 Sup.
Ct. 12, 32 L. Ed. 354; *Redfield v. Windom,* 137 id. 636,
11 Sup. Ct. 197, 34 L. Ed. 811; *Boynton v. Blaine,*
139 id. 306, 11 Sup. Ct. 607, 35 L. Ed. 183; *United
States v. Schurz,* 102 id. 378, 26 L. Ed. 167; *Cambra
v. Rogers,* 189 id. 119, 23 Sup. Ct. 519, 47 L. Ed. 734.)

The plaintiff insists that an unjust measure of quali-
fications was applied by the mayor. The character
and extent of the investigation are not prescribed by
the statute. The appointing power is expected to
investigate in good faith, fairly to consider the quali-
fications, and honestly to determine the question
submitted for decision. We discover nothing in the
evidence or findings which impeaches the good faith of
the mayor or would justify the court in treating the
decision or the appointment as nullities. Neither do
we find any irregularity in the appointment of the de-
fendant.

The judgment of the district court will be affirmed.

All the Justices concurring.