H. K. GOODRICH v. PORTER MITCHELL.

No. 13,751. (75 Pac. 1034.)

SYLLABUS BY THE COURT.

CONSTITUTIONAL LAW—*"Veterans' Preference Law"* Valid.
Section 1, chapter 186, Laws of 1901 (Gen. Stat. 1901, § 6509),
which provides that those who have served in the army and navy
of the United States in the war of the rebellion, and have been
honorably discharged therefrom, shall be preferred for appoint-
ment to office in every public department, and upon all public
works of the state, and of the cities and towns thereof, is consti-
tutional.

Original proceeding in *quo warranto.* Opinion filed
March 12, 1904. Judgment in favor of plaintiff.

*David Overmyer*, and *Thomas Dever*, for plaintiff in error.

*M. T. Campbell*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J. :  H. K. Goodrich and Porter Mitchell are each claiming the office of superintendent of the electric-light plant of Topeka. The term of this office is two years, and there is a provision that all officers of the city shall hold their offices until their successors are elected and qualified. Goodrich was duly chosen as superintendent and continued to act in that capacity until April, 1903, which was the end of the term, as fixed by ordinance. He then applied to the mayor and council of the city for appointment to the next regular term, and Mitchell made a like application. These were the only applicants for the place, and it is agreed that both are men of good reputations, are equally competent to perform the duties of the office, and equally eligible for appointment, unless Goodrich has a right to be preferred because of services and honorable discharge from the army of the war of the rebellion. Goodrich was a soldier in that war and received an honorable discharge, while Mitchell never served in the army or navy at any time. With a knowledge of these facts, the mayor and council appointed Mitchell to this office, but the refusal to appoint Goodrich was not because he was lacking in qualifications, fitness, or eligibility, nor because Mitchell possessed any superior qualifications for the office. After Mitchell was appointed and had qualified, he demanded the possession of the office, and, when Goodrich declined to surrender it, Mitchell took forcible possession and ousted Goodrich therefrom.

It is conceded that the result of this proceeding and the right to the office in this contest depend upon the constitutionality of an act spoken of as the "veterans' preference law." It provides :

"That section 1 of chapter 160 of the Laws of 1886 be and is hereby amended so as to read as follows : In grateful recognition of the service, sacrifices and sufferings of persons who served in the army and navy of the United States in the war of the rebellion and have been honorably discharged therefrom, they shall be preferred for appointment and employed to positions in every public department and upon all public works of the state of Kansas, and of the cities and towns of this state, over other persons of equal qualifications, and the person thus preferred shall not be disqualified from holding any position in said service on account of his age or by reason of any physical disability, provided such age or disability does not render him incompetent to perform the duties of the position applied for ; and when any such ex-soldier or sailor shall apply for appointment to any such position, place, or employment, the officer, board or person whose duty it is or may be to appoint a person to fill such place shall, before appointing any one to such position, make an investigation as to the qualifications of said ex-soldier or sailor for such employment, and if he is a man of good reputation, and can perform the duties of said position so applied for by him, said officer, board or person shall appoint said ex-soldier or sailor to such position, place, or employment." (Laws 1901, ch. 186, § 1 ; Gen. Stat. 1901, § 6509.)

Other provisions are that a like preference shall be given if it becomes necessary to reduce the force in any of the departments, cities or towns of the state, and penalties are also declared against those who wilfully refuse or neglect to obey the provisions of the act.

The fundamental infirmity in the act is not specifically pointed out. It is said to be unequal and arbitrary

in its operations; that the preference given to veterans necessarily restricts the privileges of others, and that it is given as reward for past services, without regard to the public service·or the general welfare of the people. It is not contended that the act conflicts with any express provision of the state or federal constitutions, but, rather, that it is contrary to the implications and spirit of our constitution.

The general doctrine is that, in the absence of constitutional limitations, the legislature may prescribe how and by whom offices shall be filled. There is no contract right or property interest in an office, and hence some of the constitutional principles invoked have no application. An office is a public agency, and an officer is a mere agent of the public, entitled to exercise the functions and perform the duties of the office for the public benefit and not for his own. The main consideration in the selection of officers and agents is the public welfare, and the state, like any other principal, may select its agents; may determine for itself who can best accomplish its purpose and whose appointment will best subserve the public good. When the constitution prescribes a method or imposes a limitation, the legislature is to that extent guided and controlled in choosing its officers; but no provision has been called to our attention which prohibits the giving of a preference to veterans of the civil war. Constitutional limitations are prescribed with respect to eligibility and the holding of office, and among them is the provision that a member of congress, or officer of the state or of the United States, cannot hold the office of governor. (Art. 1, § 10.) Neither is a United States officer eligible to a seat in the legislature. (Art. 2, § 5.) Justices of the supreme court and judges of the district court cannot

Goodrich v. Mitchell.

hold any other office during the terms for which they are elected.   (Art. 3, §13.)   Persons who are under guardianship, have been convicted of a felony, have defrauded the government, have given or received a bribe or offered to do so, have voluntarily borne arms against the government, with some exceptions, cannot hold office.   Any one who gives or accepts a challenge to fight a duel, or who carries a challenge to another, or who goes out of the state to fight a duel, is ineligible for office, and every one who has given or offered a bribe to secure his own election is disqualified from holding office during the term for which he has been elected.   (Art. 5, §§ 2, 5, and 6.) In the main, these are the provisions affecting the holding of office, and aside from these restrictions the whole matter is committed to the legislature by section 1 of article 15, wherein it is provided that "All officers whose election or appointment is not otherwise provided for, shall be chosen or appointed as may be prescribed by law."

It is conceded that the matter of holding office is a political privilege, but it is argued that it becomes a special privilege when a class of citizens are given a preference over all others.   Our constitution differs materially from those of many of the states with respect to the granting of privileges.   The only provision we have touching the subject is found in section 2 of the bill of rights, which is :

"All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit.   No special privileges or immunities shall ever be granted by the legislature, which may not be altered, revoked or repealed by the same body ; and this power shall be exercised by no other tribunal or agency."

49—68 KAN.

In most of the states the granting of special privileges or immunities is expressly prohibited; but, as will be observed, ours seemingly contemplates that such privileges may be granted, as it provides that none shall be granted that may not be altered, revoked, or repealed. The legislature may, then, exercise its judgment and discretion in the selection of officers, unhampered by restrictions, unless some are to be implied from those expressed or from the theory of our government. As an office is a public trust, to be held and exercised for the public benefit, it is always implied, perhaps, that officers shall be chosen with a view to carrying out that purpose. So it is said that a law permitting the selection of persons unfit for the office and unable to perform its duties is defective. In *Brown v. Russell*, 166 Mass. 14, 43 N. E. 1005, 32 L. R. A. 253, 55 Am. St. Rep. 357, it was, in effect, held that, in the absence of constitutional restrictions, the legislature had power to select officers at will, or to confer power of appointment on boards or officers; but that the appointment of a person or a class in preference to all others, without inquiry or determination whether the person appointed is actually qualified to perform the duties of the office, is inconsistent with the nature of our government. It was, therefore, held that a statute, making the appointment of veterans compulsory, when the appointing power should think the applicants not qualified to perform the duties of the office sought, was invalid. If that should be accepted as the correct view, our statute is not obnoxious to such a limitation, as it only gives a preference to ex-soldiers and sailors upon the theory of equality of qualifications.

Nor is there any novelty in our legislation on the subject, as like preferences have been given by the

legislatures of a great many states and by the con-
gress of the United States, and, except where the acts
have been drawn so as to conflict with express consti-
tutional provisions, they have been generally upheld.
The supreme court of Massachusetts, in response to
questions by the governor and council, held that the
provisions of a civil-service statute giving to veterans
the preference for appointment to offices that they were
found competent to fill, were constitutional.   And the
same view was expressed with reference to a provision
giving a preference in public employments.   It was
said :

"We doubt whether a statute, which purports to
compel the commonwealth and its cities and towns to
employ in the labor service persons who are not able
to perform the labor, and to pay them wages as labor-
ers, could be held to be either wholesome or reason-
able.   But if the section means that the civil-service
commissioners shall establish rules to secure the em-
ployment of veterans in the labor service of the com-
monwealth and its cities and towns in preference to
all other persons except women, if the veterans are
found competent to perform the labor, we think the
enactment is within the constitutional power of the
general court." (*In re Opinion*, 166 Mass. 589, 596,
44 N. E. 625, 34 L. R. A. 58.)

See, also, *In re Opinion*, 145 Mass. 587, 13 N. E. 15 ;
*Commonwealth v. Plaisted*, 148 id. 375, 19 N. E. 224, 2
L. R. A. 142, 12 Am. St. Rep. 566 ; *In re Sweeley*, 33
N. Y. Supp. 369 ; *Matter of Stutzbach v. Coler*, 168 N. Y.
416, 6 N. E. 697 ; *In re Wortman*, 2 N. Y. Supp. 324 ;
*Matter of McGuire*, 57 N. Y. Sup. Ct. 203, 2 N. Y.
Supp. 760 ; *State, ex rel. Cowden, v. Miller*, 66 Minn. 90,
68 N. W. 732 ; *Townsend v. Baughner*, 55 N. J. L. 381,
26 Atl. 808 ; Throop on Public Officers, §§ 95–98 ; 6
A. & E. Encycl. of L., 2d ed., 93.

*State of Iowa v. Garbroski*, 111 Iowa, 496, 82 N. W.

959, 56 L. R. A. 570, 82 Am. St. Rep. 524, is cited as an authority against the validity of a preference to veterans. That was a case where there was an attempted exemption of persons who had served in the army and navy from the payment of a license-tax. That act, which affected liabilities and imposed burdens, gave rise to a very different question than the one presented here. It was held to be a discrimination in violation of the fourteenth amendment to the federal constitution, and a denial of the equal protection of the laws. Even in that case it was remarked that "possibly a veteran soldier or sailor would be preferred, everything else being equal, for civil office, because of superior fitness, resulting from discipline of service in war ; for 'it is distinctly a public purpose to promote patriotism, and to make conspicuous and honorable any exhibition of courage, constancy, and devotion to the welfare of the state.' But the work of a pedler calls for no qualities such as a soldier or sailor acquires in the service." *State v. Shedroi*, 75 Vt. 277, 54 Atl. 1081, involved the same question and was decided in the same way.

Office-holding is a political privilege, and the matter of appointment to office is not affected by the fourteenth amendment or other provision of the federal constitution, and, as has been said, the power of the legislature is supreme in respect to appointments, save as the constitution has limited it. Already statutes have been enacted which limit the number from whom officers may be chosen, and necessarily put others who might desire these offices at a disadvantage. There are boards upon which only physicians can be appointed ; others to which only dentists are eligible ; others where architects or skilled mechanics have the preference ; others where a woman is arbitra-

rily appointed ; and still others where political opinions enter into the qualifications of members—that is, enactments that members of boards shall be taken in certain proportions from different political parties. These acts are generally held to be within the legislative power, and the preferences and the exclusions so made to be reasonable and valid.   Where the limitation from which officers shall be chosen is manifestly for the public good, and where the purposes sought and the ends attained in legislation in regard to the qualifications for office are the safety and welfare of the public, it cannot be said that the rights of any others are unduly affected or prejudiced.

If we should lay aside the gratitude, mentioned in the first part of the section in question, for those who sacrificed and suffered in defense of the nation, there are reasonable and substantial considerations for making a preference in favor of the veterans.   The love of country that induced them to fight for its existence and defend its institutions is some assurance, at least, of loyalty and fidelity in the civil service.   In the nature of things, the discipline of the army and navy tended to promote promptness, respect for authority and obedience to law, courage to meet difficulties and overcome selfish and sinister influences, steadiness of purpose, perseverance, and devotion to duty.   These considerations may very well have appealed to the discretion and judgment of the legislature in determining who could render the best service to the public, and we see no reason why they are not reasonable and sufficient.   In the civil-service laws of the country, conceded to be beneficial and valid, a preference is given because of the former experience in the public service, and why should not the public service of those who imperiled their lives in the defense of their country

receive like recognition and preference? As counsel for the plaintiff has well said, "A grateful recognition of the service, sufferings and sacrifices of persons who have served the state in war has always been recognized by all nations as the exercise of the highest public policy, as the surest guaranty of the future safety, honor and welfare of the state."

In *Keim v. United States*, 177 U. S. 290, 20 Sup. Ct. 574, 44 L. Ed. 774, the preference law enacted by congress was considered and interpreted, but its constitutionality seems to have been conceded, as no attack was made upon its validity. Judge Brewer, in deciding it, remarked that "No thoughtful person questions the obligations which the nation is under to those who have done faithful service in its army or navy." That such service afforded reasonable grounds for preference in public offices and employments was recognized in *Brown v. Russell*, supra, where it was remarked:

"It may be said that, other qualifications being equal, there are reasons to believe that a veteran soldier or sailor often will make a better civil officer than a person who never has been subjected to the discipline of service in war, and it is distinctly a public purpose to promote patriotism and to make conspicuous and honorable any exhibition of courage, constancy, and devotion to the welfare of the state shown in the public service. These things we assume the legislature may take into account in providing for appointments to office where the qualifications are not prescribed by the constitution."

The court, in *In re Opinion*, supra, in speaking of the belief that faithful service in and honorable discharge from the war of the rebellion developed such qualifications of character in men that it was to the

interest of the commonwealth to appoint them to office in preference to others, said :

"The general court may have so thought, on the ground either that such a person would be likely to possess courage, constancy, habits of obedience, and fidelity, which are valuable qualifications for any public office or employment, or that the recognition of the services of veterans in the way provided for by the statute would promote that love of country and devotion to the welfare of the state, which it concerns the commonwealth to foster.   If such was the opinion of the general court, we cannot say that it was beyond its constitutional power to enact this section.   Of the wisdom of such legislation we are not made the judges."

Faithful service and devotion to duty in the past have always been regarded as good consideration for preference or promotion in every department in life, public and private, and it belonged to the legislature to determine what qualifications and experience give the best assurance of faithful, honest and efficient public service.   The case is quite unlike the one supposed, of a right to office by those affiliated with a particular church or a particular party, or because of some private achievement.   The preference that is made here has its basis on services to the public and experience and fidelity in the public service, and we think it was within the constitutional power of the legislature to make such a preference.

It is conceded that the plaintiff possessed every qualification, and was entitled to reappointment as against the defendant, who was the only other applicant for the position.   The mayor and council were, therefore, required to give the plaintiff the preference, and under the circumstances had no power or authority to appoint the defendant.   The plaintiff, being in the office, was entitled to continue until some one was legally ap-

pointed, and, therefore, had a right to bring a proceeding in *quo warranto* to obtain the possession of the office.

Judgment will therefore be given in favor of the plaintiff.

All the Justices concurring.