The State v. Addison.

THE STATE OF KANSAS, *ex rel. Joseph Taggart, as County Attorney, etc.,* v. GEORGE K. ADDISON *et al.*

No. 15,561.    (92 Pac. 581.)

SYLLABUS BY THE COURT.

1. OFFICE AND OFFICERS — *Veterans' Preference Law — Constitutionality.* Section 1 of chapter 374 of the Laws of 1907, known as the veterans' preference law, is not unconstitutional.

2. ——— *Appointment—Qualifications—Evidence.* Under such law it is the duty of the appointing power to determine whether or not an applicant for appointment has the qualifications required, and such determination, if made fairly and in good faith, is final.

3. ——— *Competency — Requirements.* An applicant for appointment under such law, to be competent, must possess the qualifications which are essential to the prompt, efficient and honest performance of the duties pertaining to the office for which application is made.

4. ——— *Rights of Qualified Applicant.* If the applicant has these qualifications he is entitled to the office.

Original proceeding in *quo warranto.* Opinion filed November 9, 1907. Demurrer overruled as to the first, second and fourth grounds, and sustained as to the third ground.

*Fred S. Jackson,* attorney-general, and *Joseph Taggart,* county attorney, for The State.

*H. L. Alden,* for defendants.

The opinion of the court was delivered by

GRAVES, J.: In April, 1907, D. E. Cornell was elected mayor of Kansas City, Kan. After entering upon the discharge of the duties of that office he, in connection with the city council, appointed the defendants to fill existing vacancies in certain official positions in that city, as follow: George K. Addison to the office of sanitary sergeant, J. L. B. Eager to the office of city physician, Larkin Norman to the office of building in-

spector, Alex Eagle to the office of police clerk, and R. L. McAlpine to the office of city engineer. These appointments were claimed by certain veterans of the civil war residing in that city to have been made in violation of section 1 of chapter 374 of the Laws of 1907, commonly known as the "veterans' preference law."

To determine this question the county attorney of Wyandotte county, on June 1, 1907, commenced this action in this court to oust the defendants from such offices. The defendants filed separate demurrers to the petition, upon the grounds (1) that the plaintiff has no legal capacity to sue; (2) that there is a defect of parties plaintiff; (3) that several causes of action are improperly joined; and (4) that the petition does not state facts sufficient to constitute a cause of action against the defendants.

Upon the issue thus made the case has been presented. The plaintiff in the action is the state of Kansas, on the relation of the county attorney; the defendants are the incumbents of the various offices above mentioned. The petition, so far as is necessary to an understanding of the contention of the parties, reads:

"(2) That Kansas City is and has been for several years last past a city of the first class in said county, and that there is and has been for many years past maintained and established in said city the offices of sanitary sergeant, city physician, building inspector, police clerk, and city engineer, which offices are filled by appointment by the mayor of said city, by and with the advice and consent of the city council.

"(3) That on or about the first day of May, 1907, said defendant George K. Addison did unlawfully usurp and intrude himself into said office of sanitary sergeant of said city, and still usurps and claims the same, without any color of right or title thereto, as will hereinafter appear."

Paragraphs four, five, six and seven contain substantially the same averments concerning the other

defendants. Subdivisions one, two and three of para-graph eight reads:

"(1) That one Dudley E. Cornell was elected mayor of said city of Kansas City on the 2d day of April, 1907, and on the 5th day of April, 1907, qualified and entered upon the discharge of his duties, and ever since has been the duly elected, qualified and acting mayor of said city.

"(2) That the term of office of the former incumbents of each of the appointive city offices hereinbefore referred to expired on or about the 9th day of April, 1907, and on said date there was a vacancy in each of said offices, and said Dudley E. Cornell, as mayor of said city, had full power and authority and it was his duty to appoint a suitable and qualified person to fill each of said offices for a term of two years.

"(3) That on or about the 15th day of April, 1907, one F. T. Albertson, who had served in the army of the United States in the war of the rebellion, and was honorably discharged from said army, and who was and is fully competent to discharge the duties of sanitary sergeant of said city, applied verbally to said Dudley E. Cornell, as mayor of said city, for appointment to the office of sanitary sergeant of said city, and said Dudley E. Cornell, as said mayor, then and there promised said F. T. Albertson to appoint him to the office of sanitary sergeant of said city; and said F. T. Albertson was and is entitled to said appointment, and entitled to said office, but on April 30, 1907, said Dudley E. Cornell, as mayor of said city, notwithstanding his promise to said F. T. Albertson, and the application of said Albertson, unlawfully appointed defendant George K. Addison sanitary sergeant of said city, and the city council of said city in regular session unlawfully pretended to ratify and confirm said unlawful appointment, and said George K. Addison accepted said unlawful appointment, and still continues to usurp and hold said office contrary to law."

The succeeding subdivisions — four, five, six and seven—contain substantially the same averments concerning the other veterans who were applicants for appointment to these offices. Subdivisions eight and nine read:

"(8) That said F. T. Albertson, W. F. Waite, A. D.

Tanyer, C. M. Mendenhall, and C. L. McClung, and each of them, are and were men of good reputation, and citizens of the United States; and are now and for many years last past have been residents in good faith of said city and qualified electors thereof, and each of said applicants was and is fully competent and qualified to perform the duties of the particular office for which he applied; and each of said applicants was the only person who applied in each instance for the particular office for which he made application for appointment who had served in the army or navy of the United States in the war of the rebellion and had been honorably discharged therefrom; and said Dudley E. Cornell well knew that each of said applicants had served in the army or navy of the United States in the war of the rebellion, and well knew that each of said applicants was competent and qualified to perform the duties of the office for which he applied, and knew at the time that he made said unlawful appointments that said applicants were entitled to preference and to said appointments under the law of Kansas.

"(9) That none of the defendants ever served in the army or navy of the United States in the war of the rebellion, which fact was well known to said Dudley E. Cornell at the time that he made said unlawful appointments, and said defendants, and each of them, at the time they applied for appointment to the respective offices to which they were unlawfully appointed, and at the time of their said unlawful appointment, and at the time that they took possession of said offices, well knew that an honorably discharged veteran of the army or navy of the United States who had served in the war of the rebellion and who was competent to discharge the duties of the office for which he applied to said mayor for appointment had applied for each of said offices, and that an application by such qualified veteran was pending in each case, and that it was the duty of the mayor to appoint such veteran and to refuse to appoint defendants and each of them."

The first and second grounds of the demurrer are not well taken. There is no defect of parties plaintiff. It is true that each of the veterans might have brought an action in his own name to recover possession of the office to which he thought himself entitled, but

The State v. Addison.

having failed to do so the public is not concluded by such forbearance. The people generally are interested in having the laws of the state enforced. If any citizen, be he veteran or not, is wrongfully deprived of a right which by express enactment of the legislature has been conferred upon him, every other citizen is interested in having the wrong corrected. In all actions which involve the public interest the state is a proper party, and the attorney-general or county attorney is the proper person to represent the public interest therein. (*Bartlett v. The State,* 13 Kan. 99; *Miller v. Town of Palermo,* 12 Kan. 14, 16; *Bobbett v. The State, ex rel. Dresher,* 10 Kan. 9; *The State, ex rel., v. Faulkner,* 20 Kan. 541, 547; *The State, ex rel., v. Comm'rs of Marion Co.,* 21 Kan. 419, 432; *Comm'rs of Harvey Co. v. Munger,* 24 Kan. 205, 209; *The State, ex rel., v. Eggleston,* 34 Kan. 714, 723, 10 Pac. 3.)

In the case first above cited it was said:

"Whenever any person usurps an office, and attempts to hold it wrongfully and without any legal authority, as the county attorney alleges that the defendants have done and are doing in this particular case, then we suppose that not only the state but also any individual who may be entitled to hold the office may maintain an action in the nature of *quo warranto* to oust such usurper from such office. But each has a separate action, and the two together do not have a joint action. Neither is a necessary party when the other commences the action. Hence, although the state is the only plaintiff in this case, and the persons entitled to hold the different offices are not made parties thereto, still there is no defect of parties plaintiff. . . . Their separate rights of action are founded upon separate and distinct interests. The individual may prosecute the action because he is interested in the emoluments of the office, and entitled to receive the same. The state may prosecute the action because it is interested in the good government and general welfare of all its citizens. It is the duty of the state to see that no intruder shall usurp and hold an office that should be legally filled by some other person." (Pages 102, 103.)

The third ground of the demurrer seems to be well taken. The petition contains as many separate and distinct causes of action as there are defendants, and each of these several causes of action depends upon its own peculiar facts. Neither defendant is necessarily interested in the defense or success of his codefendants. A separate and different judgment must be entered upon each cause of action. Under the code every cause of action in the petition must affect all the parties to the action; otherwise they cannot be joined. (Code, § 83; Gen. Stat. 1901, § 4517; *Hurd v. Simpson,* 47 Kan. 372, 27 Pac. 961; *Rizer v. Comm'rs of Davis Co.,* 48 Kan. 389, 392, 29 Pac. 595; *L. N. & S. Rly. Co. v. Wilkins,* 45 Kan. 674, 677, 26 Pac. 16.)

The remaining ground of the demurrer involves a question that is more difficult, viz., Does the petition state facts sufficient to constitute a cause of action? The statute under which the petition was drawn reads:

"In grateful recognition of the services, sacrifices and suffering of persons who served in the army and navy of the United States in the war of the rebellion, and have been honorably discharged therefrom, they shall be preferred for appointments and employed to fill positions in every public department and upon all public works of the state of Kansas, and of the counties, cities and towns of this state, if competent to perform such services; and the person thus preferred shall not be disqualified from holding any position in said service on account of his age or by reason of any physical disability, provided such age or disability does not render him incompetent to perform the duties of the position applied for; and when any such ex-soldier or sailor shall apply for appointment to any such position, place, or employment, the officer, board or person whose duty it is or may be to appoint a person to fill such place shall, if the applicant be a man of good reputation and can perform the duties of the position applied for by him, appoint said ex-soldier or sailor to such position, place, or employment." (Laws 1907, ch. 374, § 1.)

No motion to make more definite and certain having

been filed, the language of the pleading as against the challenge by demurrer will be liberally construed. (*Long v. Thompson,* 73 Kan. 76, 78, 84 Pac. 552; *Bowersox v. Hall,* 73 Kan. 99, 84 Pac. 557.)

The conditions named in the statute which compel the recognition and appointment of a veteran are: (1) a vacant office; (2) an application by a veteran for appointment to such office who (3) served in the army or navy of the United States in the war of the rebellion and was honorably discharged therefrom, (4) is competent to perform the duties of such office, and (5) sustains a good reputation.

When these conditions exist it is the duty of the appointing power to appoint the applicant. The statute, however, is silent upon the subject as to how the existence of these facts is to be made known; it would seem, therefore, under the general rule applicable to such cases, to be incumbent upon the applicant to establish them as a part of his application for appointment. This question is not important, however, in this case, as the petition avers that the mayor already knew the facts. It was unnecesary, therefore, for the applicants to present any showing or for the mayor to make any inquiry. If in any case the existence of the essential facts which under the law give veterans the preference should be disputed, the question as to the manner in which they are to be determined would become important.

While the questions now presented arise upon a demurrer to the petition, we deem it proper to notice generally some of the provisions of the law under which this action is brought, that counsel may be guided thereby in the future progress of the case.

The law expressly makes the right of preference depend upon the existence of the facts enumerated— " shall be preferred . . . *if competent,*" etc., "shall [be appointed] *if the applicant be,*" etc., is the language of the statute. The proposition that a vet-

45—76 KAN.

eran, before he can claim a preference to an office over other citizens, must place himself within the terms of the statute which gives such right seems too clear to admit of discussion.

How or where these questions, so important to the veteran applicant, are to be determined, cannot be ascertained from the express terms of the statute. The duty of ascertaining whether these legal requirements exist or not naturally belongs to the appointing power, and to place this duty there would appear to be so eminently appropriate that under ordinary circumstances it would be assumed at once that the statute so intended, and the omission expressly so to state would be supplied by implication. A peculiar difficulty, however, stands in the way of such an interpretation of this statute. The former enactment expressly provided that the officer, board or person whose duty it was to make the appointment should, before any appointment was made, make an investigation as to the qualifications of the veteran applicant. The present law repeals this provision and does not provide in any way for the performance of this duty. From this it might be argued that it was intended to withdraw the performance of this duty from such tribunal, or to dispense with an investigation altogether. Either of these conclusions would leave the statute shorn of its most important features and would probably destroy its validity. Both should, therefore, be avoided, and some interpretation adopted, if possible, which will sustain the law. It seems clear from the language of the statute as it now stands that the legislature intended to confer this preference upon such veterans as might possess the prescribed requirements. In the absence of any provision to the contrary it may be held that the duty of determining all questions involved in making such appointments belongs to the appointing power, notwithstanding the repeal of the former act.

We conclude, therefore, that the real purpose of the

later act was not so much to change the old law with reference to the investigation and determination of the claims of applicants thereunder as to change the standard of qualifications required. Under the former act the applicant was required to possess qualifications equal to his competitors. Now it is sufficient if he is merely competent and able to perform the duties of the office.

The meaning of the word "competent," as used in this statute, is not very clear. To ascertain the signification intended reference may be made to the subject-matter about which it is used. "Competent," when used to indicate the qualifications which a public officer should possess, must necessarily include every qualification essential to the prompt, efficient and honest performance of the duties pertaining to the office to be filled. A law which means less than this cannot stand. The maintenance of an efficient public service in all the departments of the government is a matter of paramount importance. Desirable as it may be to confer special public favors upon the rapidly disappearing patriots of this state, it cannot be done at a sacrifice of the public welfare.

Many old veterans remain who are abundantly qualified to meet all the requirements which the best public service may demand, and to such the provisions of the veteran's preference law were intended to apply. The determination of the appointing board or officer as to the qualifications of the applicant involves official discretion, and, when made fairly and in good faith, is final. (*Dever v. Humphrey,* 68 Kan. 759, 75 Pac. 1037.) The former law was upheld as valid by this court because by its provisions only men possessing qualifications which would satisfy the requirements of an efficient public service could receive its benefits. (*Dever v. Humphrey,* 68 Kan. 759, 75 Pac. 1037; *Goodrich v. Mitchell,* 68 Kan. 765, 75 Pac. 1034, 64 L. R. A. 945, 104 Am. St. Rep. 429.)

The constitutionality of this and similar laws has

been challenged upon the ground that they confer special privileges upon particular citizens to the exclusion of others. There is no constitutional provision in this state which, in express terms, prohibits this kind of legislation. (*Goodrich v. Mitchell*, 68 Kan. 765, 769, 75 Pac. 1034, 64 L. R. A. 945, 104 Am. St. Rep. 429.) The question, therefore, must be regarded as one of public policy rather than of constitutional law. The appointment of incompetent, inefficient or dishonest persons to public office is generally conceded to be bad public policy; and a law under the provisions of which unsuitable persons can be preferred over those who are suitable is manifestly opposed to good government and contrary to the ordinary conception of a sound public policy. On the other hand, it is a wise and beneficent public policy which provides that the patriotic citizen who has endured the perils and privations of war in defense of his country shall in his declining years be preferred for appointive offices, when such preference does not impair the efficiency of the public service. Under the law of 1907, as here interpreted, the veteran who is found competent, upon a fair and impartial inquiry conducted by a public officer in the discharge of an official duty, is entitled to receive the office desired. The law is therefore constitutional, and in harmony with a wise and beneficent public policy.

We conclude (1) that a veteran who shows himself competent, within the meaning of the law, to perform the duties pertaining to the office applied for is entitled thereto; (2) that it is the duty of the appointing power to determine whether or not the applicant possesses the qualifications which make him competent; and (3) that the examination of such questions shall be conducted fairly, impartially, and in good faith, and, when so conducted, is not subject to review.

The demurrer is overruled as to the first, second and fourth grounds, and sustained as to the third.