## Veterans' Preference

MILLER, Deputy Attorney General, July 16, 1947.—
This department is in receipt of your request for advice on the interpretation of the word "preference" as it is used in the Act of May 22, 1945, P. L. 837, as last amended by the Act of June 25, 1947, no. 392, 51 PS §§492.1-492.8, inclusive, which provides and requires preference in appointments to, or promotions in, as well as retention in public positions or on public works of honorably discharged persons who served in the armed forces of the United States, or in any women's organization officially connected therewith, during any war in which the United States engaged; and includes such preference of the widows and wives of disabled soldiers.

From early days, the Commonwealth has had legislation in effect granting various exemptions, privileges and preferences to men and women who have served in the wartime military service of our country in recognition of their patriotism and sacrifices as well as

giving them credit for the experience and training gained while so engaged.

Webster's New International Dictionary (2nd ed., p. 1948), includes the following definitions of the word "preference":

"1. Act of preferring, or state of being preferred; the setting of one thing before or above another; higher estimation; predilection; prior choice; also, the power or opportunity of choosing; as, to give him his *preference.*

"3. One who or that which is preferred; the object (person or thing) of choice or superior favor; as, which is your *preference?*

"7. *Law.* Priority in the right to demand and receive satisfaction of an obligation, as the payment of a debt in full or in part."

Statutes requiring soldiers' preferment in appointment to public office or employment are generally held valid by present-day decisions, provided they require that the soldier possess, independently of any preference granted to them, the minimum qualifications necessary for the discharge of the public duties involved: People ex rel. Sellers v. Brady et al., 262 Ill. 578, 105 N. E. 1 (1914) ; Herman et al. v. Sturgeon, 228 Iowa 829, 293 N. W. 488 (1940) ; State v. Addison et al., 76 Kan. 699, 92 Pac. 581 (1907) ; Ricks v. Department of State Civil Service et al., 200 La. 341, 8 So.(2d) 49 (1942) ; City of Lynn v. Commissioner of Civil Service et al., 269 Mass. 410, 169 N. E. 502 (1929) ; Swantush et al. v. City of Detroit et al., 257 Mich. 389, 241 N. W. 265 (1932) ; State ex rel. Kangas v. McDonald et al., 188 Minn. 157, 246 N. W. 900 (1933) ; State ex rel. Raines et al. v. City of Seattle et al., 134 Wash. 360, 235 Pac. 968 (1925).

In Bateman et al. v. Marsh et al., 188 Misc. 189, 64 N. Y. S. (2d) 678 (1946), in approving the New York Veterans' Preference statute, the court said that the preference was in the nature of the payment of a

debt of gratitude by the people of the State to persons who have loyally served their country in time of war and, as such, is valid under the Fourteenth Amendment.

In Commonwealth ex rel. Graham (to use of Markham et al.) v. Schmid, 333 Pa. 568 (1938), Annotation 120 A. L. R. 777, the court said (pp. 574, 575) :

"In the cases considering preferences, the various statutes fall into groups or types. Some give preferences to veterans where the position does not require an examination. . . .

"Other statutes, though ostensibly mandatory and not expressly requiring that veterans be equally qualified with other candidates or at least reasonably qualified to handle the position, have been held constitutional by construing them to contain the implied condition that the preferred veterans be qualified to do the work in a reasonably efficient manner. . . .

"Another class of cases deals with civil service requirements creating varying types of preferences, such as: an absolute or discretionary preference regardless of standing on the list if a passing grade has been obtained; complete exemption from examinations required of non-veterans; giving veterans additional points or percentage credits in determining a passing grade, or the equivalent, lowering the passing grade for veterans; and, finally, giving added points when the veteran has passed the examination at the regular passing grade and is thus placed on the eligible list."

The courts of the Commonwealth, in general, have given a liberal interpretation of legislation favoring war veterans: 1945-46 Op. Atty. Gen. 58.

In Preferential Treatment of War Veterans (No. 2), 38 D. & C. 129, after discussing at length the historical background and application of veterans' preference statutes, a formal opinion of this department came to conclusions in relation to appointments under

the provisions of the Veterans' Preference Act of June 27, 1939, P. L. 1198, now repealed, that are now in effect, for appointments and promotions of soldiers, as defined by the Act of May 22, 1945, P. L. 837. Paragraphs 6 and 7 of the said opinion's holdings were, as follows (p. 142) :

"6. Whenever a soldier, as defined in the Act of June 27, 1939, P. L. 1198, possesses the requisite qualifications and is eligible to appointment to such public position, where no civil service examination is required, the appointing power must appoint such soldier to such position, provided he is morally and physically fitted for the position.

"7. A soldier, as defined in the Act of June 27, 1939, P. L. 1198, who has passed a civil service examination, and who possesses the requisite qualifications, may be preferred by the appointing power, even though his name does not appear on the eligible list."

In an opinion of this department, Preferential Treatment of War Veterans (No. 3), 45 D. & C. 311, discussing the Veterans' Preference Act of August 5, 1941, P. L. 872, the chairman of the State Civil Service Commission was advised, inter alia, that the appointing power must select a veteran for appointment from the certified list of eligibles, if a veteran's name appeared thereon, although if two or more veterans' names appeared on the certified list, he could, in his discretion, select any one of them, even though the selected veteran's grade was not the highest thereon. In the event that no veteran's name appeared on the certified list, the appointing power could, in his discretion, select the name of a veteran farther down on the eligible list, so long as the veteran selected had met the prerequisite qualification of a passing grade, without the aid of the 10-point addition to his initial grade.

In Benefits Under Veterans' Preference Act, 54 D. & C. 153, the 1945 Veterans' Preference Act is dis-

cussed in many of its phases, and it is held, inter alia, that the term "preferential rating" as contained in section 7, gives to wives and widows of disabled soldiers all preferences in the act, to which honorably discharged soldiers are entitled. The present act retains and reënacts all of the preference provisions in the Acts of June 27, 1939, P. L. 1198, and August 5, 1941, P. L. 872, and further broadens the definition of the word "soldier" as a person who served in the armed forces of the United States, to include a person who served in any women's organization officially connected therewith, during any war in which the United States was engaged, and who has an honorable discharge from such service, and also gives to wives and widows of disabled soldiers all preferences in the act, to which honorably discharged veterans are entitled.

The Act of May 22, 1945, P. L. 837, as amended, added three new sections, 51 PS §§492.5, 492.6 and 492.7, which provide as follows:

"Section 5. The lack of academic or scholastic training or experience, age, loss of limb or other physical impairment which does not in fact incapacitate any such soldier shall not be deemed to disqualify him, provided he possesses the other requisite qualifications to satisfactorily perform all of the duties which the position requires.

"Section 6. Whenever the Commonwealth issues specifications for the construction, alteration or repair of any public works, such specifications shall include a provision under which the contractors and subcontractors shall agree to give a preferential rating similar to that given by this Commonwealth, as herein provided, to any soldier making application for employment upon such public works.

"Section 6.1. Whenever a reduction in force is necessary in any public position or on public works of this Commonwealth and its political subdivisions and personnel are discharged according to seniority the num-

ber of years of service of any soldier shall be determined by adding his total years of service in the civil service or on public works to his total years of service as a member of the armed forces of the United States or in any women's organization officially connected therewith during any war in which the United States engaged.

"Section 7. The same preferential rating given to soldiers under the provisions of this act shall be extended to include the widows and wives of disabled soldiers."

Section 8 of the 1945 act, as amended, 51 PS §492.8, provides as follows:

"Section 8. This act shall be construed as being the exclusive law applying to the Commonwealth, and its political subdivisions, in giving preference to soldiers in appointment or promotion to public position or on public works."

Sections 5, 6, 6.1, and 7 of the 1945 act, as amended, require contractors and subcontractors who construct, alter or repair public works, to extend the same preferences in employment to soldier applicants, and applicants who are the widows, or wives of disabled soldiers.

In the case of Wood v. Philadelphia, 46 Pa. Superior Ct. 573 (1911), the provision of the Act of May 5, 1906, P. L. 83, excepting honorably discharged soldiers, sailors and marines, as well as their widows and children, from examinations for qualifications and fitness, was held class or special legislation and "an attempt at legislation beyond the constitutional powers of the general assembly, and therefore inoperative and void". The court, in discussing the exception in the 1906 act, makes the following statement (pp. 579, 580):

"It has no relation whatever to the subject-matter of the legislation. Satisfactory qualifications for the

discharge of the duties which fall upon the officials of a city can no more be predicated of the children of soldiers and sailors than they could be of the off-spring of doctors and lawyers. The attempted classi-fication here sought to be made rests upon no natural reason and certainly upon no necessity, because it is impossible to see any reason why, with relation to the public service of a great city, the children of soldiers and sailors should be treated differently from other applicants whose parents, however useful and honorable their lives, had not been fortunate enough to have served the government in time of war."

It is to be noted that the provisions excepting honor-ably discharged soldiers, sailors and marines, as well as their widows and children from civil service require-ments, as contained in the 1906 act, did not require the excepted class to meet the minimum standard qualifications that are made mandatory in the 1945 act for all applicants, including soldiers, and the widows and wives of disabled soldiers. In other words, an applicant entitled to preference in appointment, under the provisions of the 1945 act, must meet the same minimum standard requirements that are estab-lished by the civil service commission for applicants not entitled to preference, including the successful passing of a written examination, before any prefer-ence is extended to him. After the applicant entitled to preference has successfully passed the regular exam-ination given all applicants, the 1945 act waives an academic or scholastic training, experience, age or physical requirement *which does not in fact disqualify him*, so long as he possesses the other necessary quali-fications satisfactorily to perform all of the duties which the position requires. In effect, section 5 of the 1945 act waives very little, if any, of the qualifications required of all applicants. The appointing power, in the performance of its appointing function, is confined in

its authority by the express terms of section 5 to waive a particular qualification, only it it will not prevent the appointee from performing *all* of the duties required of the office in a satisfactory manner.

The appointing power has the duty to determine the other qualifications of an applicant as well as those determined by the results of the written examination, where so authorized and directed by the act governing the appointment: Seward, Director of Public Service, v. State ex rel. Kratt, 129 Ohio 296, 195 N. E. 241 (1935) ; Platt v. Prince, General Treasurer, 53 R. I. 492, 167 Atl. 540 (1933).

Section 6, which requires contractors and subcontractors, in the performance of contracts on public works, to give the same preferential consideration to soldiers as is made mandatory in the Commonwealth is an exercise by the Commonwealth of its right, so long as it does not interfere with the public interest, to employ any person it chooses, with the same freedom of contract that belongs to an individual. No contractor or subcontractor is asked to do more than others who perform the same work: Shaw v. City Council of Marshalltown, 131 Iowa 128, 104 N. W. 1121 (1905). The contractor is not required to pay higher wages to the employes, so preferred, under his control on public works, nor accept substandard services. The public interest, therefore, is not adversely affected by section 6 since the same services, at the same cost, are rendered the public by the contractor or subcontractor who complies with the provisions of the act: Commonwealth ex rel. Graham (to use of Markham et al.) v. Schmid, supra; Carney et al. v. Lowe et al., 336 Pa. 289 (1939).

Under the provisions of the 1945 act, all applicants, including soldiers, or the widow and children of disabled soldiers, must first successfully pass the same examination or other qualifying prerequisite before appointment, without the aid of any preferential rating of their examination or selection of them as ap-

pointees. Likewise, the 1945 act is not subject to the objections which held invalid the Act of June 17, 1917, P. L. 600, as amended by the Act of April 21, 1942, P. L. 50, which provided for specified payments to the widows and dependent children of public employes in the armed service of the United States. In the case of Kurtz v. Pittsburgh et al., 346 Pa. 362 (1943), the 1917 act, as amended, was held invalid, as a violation of article III, sec. 18, of the Constitution, as well as being an unreasonable and artificial distinction between members of a class and the general public. The 1945 Preference Act is applicable and available to all applicants whom the Commonwealth, in its considered action, has manifested a desire to prefer for employment in the performance of the public services covered by the act, so long as there is no loss in the efficiency nor increase in the cost of operation of government by reason of the preference.

It is our opinion, therefore, and you are accordingly advised, that a "soldier", as defined by the Act of May 22, 1945, P. L. 837, as well as the widow or wife of a disabled soldier, is entitled, under the classification of "soldier" to preference in appointment to, or promotion in, as well as retention in public positions, as follows:

1. After a soldier has successfully passed any civil service examination, it shall be marked or graded an additional 10 points, and the total final grade or mark thus obtained, shall determine his standing on any eligible or promotion list, certified or furnished to the appointing or promoting power.

2. Where no civil service examination is required, a soldier must be selected for appointment or promotion if he is an eligible applicant or candidate and, in the discretion of the appointing power, possesses the requisite qualifications efficiently to perform the duties of the position.

3. A soldier must be selected for public office if his name appears on the certified list furnished the appointing power, as the result of a required civil service examination, and in the event that the names of more than one soldier appear on the said certified list, the appointing power may select, in his discretion, any one of them, even though the soldier selected did not attain the highest mark as shown on the list.

4. A soldier may be selected, in the discretion of the appointing or promoting power, if he has the qualifications and, without the addition of any points to his final grade or mark, has passed the required civil service examination, even though his name does not appear on the eligible or certified list furnished the appointing or promoting power.

5. A soldier's lack of academic or scholastic training or experience, age or lack of physical qualifications must be waived, if in the reasonable judgment of the appointing or promoting power, the soldier is not actually incapacitated from performing the duties of the position as efficiently as a qualified and eligible applicant or candidate not entitled to the waiver, and provided the soldier possesses the other requisite qualifications satisfactorily to perform all of the duties which the position requires.

6. The specifications issued by the Commonwealth for the construction, alteration, or repair of any public works, shall require the contractor or subcontractor chosen to give the same preferential rating to a soldier applicant for employment upon such public works, that is given by the Commonwealth to its own employes, who are entitled to preference.

7. Whenever a necessary reduction of personnel employed in public positions or on public works is made on a seniority basis, a soldier is entitled to have the total number of years he served as a member of the armed forces of the United States or in any women's organiza-

tion officially connected therewith, during any war in which the United States engaged, added to his total years in the civil service or on public works, in the computation of his seniority rights.