George S. Webb, Executive Director Kansas Commission on Veterans' Affairs 700 S.W. Jackson, Suite 701 Topeka, Kansas 66603-3758
Dear Mr. Webb:
You pose three questions for our response. First, you inquire whether K.S.A. 73-201, commonly referred to as the veterans' preference law, applies to all cities and counties within the State of Kansas or if there is any instance in which it might not apply to cities or counties. Second, you ask whether K.S.A.73-201 and K.S.A. 75-2955 are in conflict, particularly taking into consideration the administrative regulation implementing K.S.A. 75-2955. Finally, you query whether K.S.A. 75-2925
supercedes K.S.A. 73-201 and K.S.A. 75-2955 by regarding veterans' preference as a nonmerit factor that should not be considered in civil service hiring decisions.
K.S.A. 73-201 provides, in pertinent part, as follows:
 "In grateful recognition of the services, sacrifices and sufferings of persons who served in the army, navy, air force or marine corps of the United States in world war I and world war II, and of persons who have served with the armed forces of the United States during the military, naval and air operations in Korea, Viet Nam or other places under the flags of the United States and the United Nations or under the flag of the United States alone, and have been honorably discharged therefrom, they shall be preferred for appointments and employed to fill positions in every public department and upon all public works of the state of Kansas, and of the counties and cities of this state, if competent to perform such services; and the person thus preferred shall not be disqualified from holding any position in said service on account of his age or by reason of any physical or mental disability, provided such age or disability does not render him incompetent to perform the duties of the position applied for; and when any such ex-soldier, sailor, airman or marine shall apply for appointment to any such position, place, or employment, the officer, board or person whose duty it is or may be to appoint a person to fill such place shall, if the applicant be a man or woman of good reputation, and can perform the duties of the position applied for by him, or her, appoint said ex-soldier, sailor, airman or marine to such position, place, or employment."
In answer to your first question, by its own terms the veterans' preference law applies to "positions in every public department and upon all public works of the state of Kansas, and of the counties and cities of this state." We are unaware of any exceptions, instances or bases in which the law would not apply to employment opportunities within the public departments or works of Kansas counties and cities. We have found no case law to the contrary and in fact, the law's application to cities recently was confirmed in dicta by the Kansas Court of Appeals.[1]
As you know, we touched upon the issue addressed in your second question, regarding whether there is a conflict between K.S.A.73-201 and 75-2955, in another recent opinion. That opinion, however, went only so far as to lay out the general rule that "K.S.A. 75-2955 would supercede K.S.A. 73-201 with regard to Kansas Civil Service Act hiring in a situation where both statutes could not be given full sway, because K.S.A. 75-2955 is the newer legislative pronouncement."[2] Your present inquiry on whether the administrative regulation implementing K.S.A. 75-2955 specifically conflicts with K.S.A. 73-201 requires review of the history of these two statutes and the rules of statutory construction.
The concept of a veterans' preference was first conferred by the Kansas Legislature in 1886 through enactment of a precursor to K.S.A. 73-201.[3] Prior to its amendment in 1907, K.S.A.73-201 required a veteran applying for a public position to be at least equally qualified to other applicants in order to enjoy the veterans' preference. In 1907, the "equal qualifications" portion was deleted; henceforth, veterans applying for public positions instead had to be "competent to perform such services" in order to trigger the preference.[4]
The Kansas Supreme Court opined in a case decided soon after the 1907 amendment to the veterans' preference law regarding what the term "competent" meant within the context of K.S.A. 73-201:
 "`Competent,' when used to indicate the qualifications which a public officer should possess, must necessarily include every qualification essential to the prompt, efficient and honest performance of the duties pertaining to the office to be filled. A law which means less than this cannot stand. The maintenance of an efficient public service in all the departments of the government is a matter of paramount importance. Desirable as it may be to confer special favors upon the rapidly disappearing patriots of this state, it cannot be done at a sacrifice of the public welfare. Many old veterans remain who are abundantly qualified to meet all the requirements which the best public service may demand, and to such the provisions of the veterans' preference law were intended to apply."[5]
This case law remains applicable and is essential to any discussion of what the veterans' preference law actually requires. Read literally, we agree that K.S.A. 73-201 requires almost carte blanche hiring of a veteran over a non-veteran for jobs in every division of State and local government. The Kansas Supreme Court, however, repeatedly has construed the law as giving hiring authorities significant discretion to determine the competency of candidates for public positions, thereby rendering the statute more subjective than objective. Furthermore, the Court repeatedly has declined to second guess or substitute its judgment for that of a hiring authority, as long as the hiring authority has acted in good faith.[6] Essentially, case law unfortunately has rendered the veterans' preference statute as having very limited enforceability.
As interpreted by the Kansas Supreme Court, the veterans' preference law has never provided absolute preference. Meeting the minimum qualifications for a position does not necessarily render one "competent," and therefore entitled to the job based on veterans' preference, within the meaning of the law as interpreted by the Court.
Nonetheless, while according to the Court being "competent" requires more than merely meeting the minimum qualifications for a position, it apparently does not require a veteran seeking preference to be the "best qualified" candidate. If that were the case, the veterans' preference law effectively would be meaningless; all hiring and promotional decisions would be made strictly on the basis of merit, notwithstanding a veteran's eligibility for the preference. Accordingly, the standard of competence must be somewhere between these two ends of the spectrum. The challenge, then, in enforcing the law is that the Court has established a subjective standard in hiring authorities' determinations of whether candidates are competent; absent evidence of bad faith, hiring authorities' decisions will be given great deference by the Court.
Several rules of statutory construction are key to our review of whether K.S.A. 73-201 and 75-2955 are in conflict. "The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained."[7] Also, it is well-settled that "[w]hen two statutes conflict . . . then the more specific, more recent statute controls."[8] Finally, "[t]he legislature is presumed to know the law"[9] and "there is a presumption that the legislature does not intend to enact useless or meaningless legislation."[10]
We presume the Legislature was aware of the provisions of K.S.A. 73-201 at the time it enacted K.S.A. 75-2955 — the more specific, more recent statute — and that it intended the provisions of K.S.A. 75-2955 to be given effect. This presumption seems particularly reasonable given that, on two occasions, K.S.A. 73-201 and 75-2955 have even been amended in the same legislative act.[11]
K.S.A. 73-201, which most recently was amended in 1970,[12] expressed the general policy of the State in granting veterans' preference in public employment. The Legislature, however, also recognized the need to establish a system of employment that would meet the needs of State agencies and be based on merit principles and fitness to perform the work required.[13] Since the time of its original enactment in 1941, the Kansas Civil Service Act[14] has included a section devoted to the issue of veterans' preference specifically within the State's civil service system; that section of the Act is codified at K.S.A. 75-2955. At the time of its original enactment, K.S.A. 75-2955 read as follows:
 "In all examinations under this act a veteran's preference shall be given to soldiers, sailors, nurses, and marines honorably discharged from the army, navy or marine corps of the United States, who served in the civil war, Spanish-American war, Philippine insurrection, China relief expedition, or World War; and who are citizens of the United States and have been residents of the state of Kansas two years immediately preceding their application. To the final earned rating of all war veterans, as defined herein, who shall have attained a passing rating on any open competitive examination, there shall be added a credit of five points and in the case of a disabled war veteran there shall be added a total credit of ten points: Provided, however, That no disabled veterans shall be entitled to the additional benefits herein provided unless such disability is at the time of such examination rated by the United States veterans administration as being service connected and not less than fifteen percent. The name of a veteran shall be entered ahead of a nonveteran when their ratings are the same."[15]
Numerous amendments have been made to K.S.A. 75-2955 over the years, but immediately prior to the most recent amendments — in 1995 — the law read as follows:
 "(a) In all examinations under this act, veterans' preference shall be given to [those hereafter described].
 . . . .
 "(c) To the final earned rating of each person who is described in subsection (a) and who has attained a passing rating on any open competitive examination, there shall be added a credit of five points, except that, in the case of a person described in subsection (a)(3), there shall be added a total credit of 10 points."[16]
The 1995 amendment to K.S.A. 75-2955[17] was the result of Senate Bill No. 175. The veterans' preference provision was discussed when Senate Bill No. 175 was heard before the House Committee on Business, Commerce and Labor. Bobbi Mariani, then Assistant Director of the Division of Personnel Services — which supported passage of Senate Bill No. 175 — testified that "veterans' preference will be given when certifying the names of veterans to pools of eligible candidates. Currently, veterans' preference points are given on applicant examinations. Because there will normally not be any examinations as we currently know them under the new system, administrative rules and regulations will define what type of preference veterans will receive within the eligible pools."[18] Mariani responded to the committee's questions on how the veterans' preference would be decided, indicating that because the then-existing system only added veterans' preference points to test scores, only about 27% of the applicants were affected. Mariani explained that under the new procedure, the Division of Personnel Services expected that points would be added to a larger number of veterans' applications.[19]
Kansas American Legion (AL) Adjutant Charles Yunker, on the other hand, testified against the legislation. Yunker indicated the AL was "very leery of having veterans preference administered by rules and regulations, because they would be much easier to change than would a statute, and the AL did not believe Senate Bill No. 175 guaranteed that veterans preference rules and regulations would not be changed to the determent [sic] of veterans."[20] John Hill, on behalf of the Disabled American Veterans (DAV), Department of Kansas, also testified in opposition to the bill. Hill indicated the DAV's concerns included that the bill would "likely eliminate preference for veterans" and that the pool concept would "make it very easy for agencies to hire based on criteria that is not part of a merit system."[21]
When the bill came up for vote in the House Committee on Business, Commerce Labor on March 17, 1995, Representative Carol Beggs offered an amendment, apparently in response to the concerns veterans' organizations had voiced about maintaining the sanctity of the veterans' preference. The Committee approved the amendment and advanced the bill with the following language added to subparagraph (b): "However, in no case shall any rules and regulations adopted pursuant to this act give veterans any less preference in employment than existed prior to July 1, 1995."[22] Minutes from the Senate Ways Means Committee do not reflect whether that committee had similar discussions regarding Senate Bill No. 175; however, the bill was sent to a conference committee and ultimately, when it was enacted, it included language similar to that proposed by Representative Beggs: "However, under no circumstances shall veterans be accorded any less preference than existed prior to July 1, 1995."[23]
What, exactly, the Legislature intended by this language is unclear. Prior to the amendment, veterans were given preference by having points added to their scores on employment tests. According to the testimony of Bobbi Mariani, however, that practice resulted in only about 27% of applicants being affected by the preference, whereas doing away with the examination process and instead utilizing a system where applicants meeting the minimum qualifications were entered into a pool of candidates certified to be eligible was expected to affect a larger percentage of veterans. As currently implemented by K.A.R.1-6-21, all qualified veterans among the pool of certified eligible candidates are afforded an interview opportunity.
We cannot say with certainty this practice is what the Legislature envisioned; nor can we determine conclusively whether it results in veterans being "accorded . . . less preference than existed prior to July 1, 1995."[24] What is clear, however, is that the Legislature chose not to specify in the statute exactly how the veterans' preference was to apply, leaving the issue subject to interpretation through rules and regulations.[25]
Furthermore, the Kansas Supreme Court previously has approved the general practice of imposing threshold requirements on veterans before they may enjoy any preference. In a case concerning a precursor to K.S.A. 75-2955, the Court found that establishing competency by requiring certain appointments be made from a list certifying the two highest in rank at a civil service examination was not in conflict with the veteran's preference law enacted in 1907.[26]
Based on the foregoing, we believe the practice employed by K.A.R. 1-6-21 — of applying veterans' preference to those veterans certified as eligible for the position being sought, by ensuring they are offered an interview — passes muster and effectively implements K.S.A. 75-2955 without compromising or conflicting with K.S.A. 73-201. We are cognizant that "[t]he power of an administrative agency to adopt rules and regulations is administrative in nature, not legislative, and to be valid administrative regulations must be within the authority conferred. An administrative regulation which goes beyond or conflicts with legislative authorization is void."[27]
Furthermore, whenever a "conflict exists between the provisions of [an] administrative regulation and [a] statute, the provisions of the statute prevail."[28] Finally, "[r]ules must be within the authority conferred by statute and an administrative regulation which goes beyond or conflicts with legislative authorization is void."[29] Accordingly, when our office last reviewed and approved the legality of K.A.R. 1-6-21 in conjunction with a 2003 revision of the regulation, we determined it was "within the statutory authority of the Kansas Department of Administration" based on "our understanding that, in accordance with K.S.A. 75-2955(b), this regulation provides more preference to veterans than was the practice prior to July 1, 1995, and that it is more beneficial to veterans than was the `rule of five.'"[30] If the facts in a specific case prove otherwise, the regulation would be deemed void as in conflict with the Act.
Finally, we turn to your question about whether K.S.A. 75-2925
supercedes K.S.A. 73-201 and/or K.S.A. 75-2955 by allowing veterans' preference to be abolished. Specifically, you ask our opinion on whether or not status as a veteran falls under the definition of "nonmerit reason" in this regard.
K.S.A. 75-2925 provides that "[p]ersonnel administration actions regarding employees in the state classified service shall be made without regard to race, national origin or ancestry, religion, political affiliation, or other nonmerit factors [and instead] . . . shall be based on merit principles and fitness to perform the work required. . . ."[31] "Nonmerit reason" is defined as "any reason specifically based on: (1) Race, national origin or ancestry, religion or political affiliation; (2) sex or age where sex or age does not constitute a bona fide occupational qualification necessary to proper and efficient administration; or (3) disabilities which are qualified disabilities under the Americans with Disabilities Act of 1990, Pub.L. 101-36, and amendments thereto, and which do not prevent the individual from performing the position's essential functions, with or without reasonable accommodation."[32]
"Merit principles" is defined to mean "relative knowledge, skill and ability."[33]
Pursuant to these definitions, status as a veteran clearly is not a "nonmerit reason." Accordingly, K.S.A. 75-2925 does not supercede or conflict with either K.S.A. 73-201 or K.S.A.75-2955. This conclusion is further buttressed by again applying rules of statutory construction. "General and special statutes should be read together and harmonized whenever possible, but to the extent a conflict between them exists, the special statute will prevail unless it appears the legislature intended to make the general statute controlling."[34] Furthermore, "[i]n construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible."[35]
Given that K.S.A. 75-2925 and 75-2955 most recently were amended in 1995, pursuant to the same act,[36] construing K.S.A. 75-2925 to somehow negate or supercede K.S.A. 75-2955
would result in the latter statute having no meaning. This would contravene the rules of statutory construction.
In summary, we believe the veterans' preference law, K.S.A.73-201, clearly applies to positions in public departments and upon public works not only of the State of Kansas, but also of Kansas counties and cities. We also believe K.S.A. 75-2955, as implemented by K.A.R. 1-6-21, effectively accords veterans' preference by guaranteeing veterans an interview for any position they apply for within the State civil service as long as they meet the minimum requirements for the given position and therefore are within the certified pool of eligible candidates. This practice does not appear to conflict with K.S.A. 73-201 as it has been interpreted by the Courts. And finally, we believe K.S.A. 75-2925 establishes only the general parameters of the State civil service system; it does not supercede the specific provisions of K.S.A. 75-2955, which set forth the policy of still granting veterans' preference within the State civil service system.
Sincerely,
 Phill Kline Attorney General
 Laura M. Graham Assistant Attorney General
PK:JLM:LMG:jm
[1] Little v. State of Kansas, 34 Kan.App.2d 557 (2005).
[2] Synopsis, Kansas Attorney General Opinion No. 2004-4.
[3] See L. 1886, Ch. 160, § 1.
[4] L. 1907, Ch. 374, § 1.
[5] State v. Addison, 76 Kan. 699, 707 (1907) (emphasis added).
[6] See, e.g., Dever v. Humphrey, 68 Kan. 759 (1904); Statev. McNeill, 83 Kan. 234 (1910); and Owens v. City ofCoffeyville, 151 Kan. 263 (1940).
[7] Jones v. Kansas State University, 279 Kan. 128, 145
(2005).
[8] State ex rel. Tomasic v. Unified Gov't of WyandotteCounty/Kansas City, Kan., 264 Kan. 293, 311(1998).
[9] Application of American Restaurant Operations,264 Kan. 518, 524 (1998).
[10] In re City of Wichita, 274 Kan. 915, 927 (2002).
[11] See L. 1945, Ch. 301, §§ 1 and 10; L. 1951, Ch. 429, §§ 1 and 9.
[12] L. 1970, Ch. 306, § 1.
[13] See K.S.A. 75-2925.
[14] K.S.A. 75-2925 et seq.
[15] L. 1941, Ch. 358, § 31.
[16] L. 1993, Ch. 72, § 1.
[17] L. 1995, Ch. 213, § 13.
[18] Attachment 3, Minutes, House Committee on Business, Commerce Labor, March 9, 1995. See also Attachment 2, Minutes, Senate Committee on Ways Means, February 13, 1995 (reflecting identical written testimony by Mariani before the Senate committee considering the bill).
[19] Minutes, House Committee on Business, Commerce Labor, March 13, 1995.
[20] Id. at Attachment 1.
[21] Id. at Attachment 2.
[22] Minutes, House Committee on Business, Commerce Labor, March 17, 1995. See also Attachment 1 to same minutes.
[23] L. 1995, Ch. 213, § 13(b); K.S.A. 75-2955(b).
[24] K.S.A. 75-2955(b).
[25] See the last sentence of K.S.A. 75-2955(b): "The secretary of administration shall adopt rules and regulations necessary to implement the provisions of this section."
[26] See, e.g., Goodrich v. O'Neill et al., 85 Kan. 595
(1911) ("[t]he soldiers' preference law does not prevent the Legislature from prescribing qualifications for appointment to office, . . . [such as] that the candidate must be able to demonstrate his fitness by success in a competitive examination. This does not conflict with the veterans' law, which still has abundant field for operation. The appointment must be made from the certified list, but if the name of an ex-soldier appears thereon he must have the preference").
[27] Willcott v. Murphy, 204 Kan. 640, Syl. 1 (1970).
[28] Ruddick v. Boeing Co., 263 Kan. 494, 500 (1997).
[29] Mitchell v. Liberty Mutual Ins. Co., 271 Kan. 684, 700
(2001).
[30] Letter from Deputy Attorney General Julene L. Miller to Faith Loretto, Department of Administration Legal Section, July 16, 2003.
[31] Emphasis added.
[32] K.S.A. 75-2926(g).
[33] K.S.A. 75-2926(f).
[34] State v. Le, 260 Kan. 845, Syl. 2 (1996).
[35] United Steelworkers of America v. Kansas Comm'n on CivilRights, 253 Kan. 327, Syl. 1 (1993).
[36] See L. 1995, Ch. 213, §§ 2 and 13, respectively.