No. 34,555

HARRY OWENS, *Plaintiff*, v. THE CITY OF COFFEYVILLE, JOHN D. BYERS, ARTHUR R. WILSON and CHARLES D. LOCKARD, as its Board of Commissioners, and ARTHUR HENRY, *Defendants*.

(98 P. 2d 415)

Opinion filed January 27, 1940.

*Walter S. Keith, Arthur Baker,* both of Coffeyville, and *George Wark,* of Caney, for the plaintiff.

*Aubrey Neale,* city attorney, and *Charles D. Welch,* of Coffeyville, for the defendants.

*Arthur Henry,* pro se.

The opinion of the court was delivered by

ALLEN, J.: This is an original proceeding in quo warranto to oust· and enjoin the defendant Arthur Henry from exercising and enjoying the office of patrolman in the city of Coffeyville, and praying that plaintiff be adjudged entitled to such office, with its emoluments and franchises.

The plaintiff alleges that he is an ex-soldier of the World War; that he served in the United States army in overseas service; that he received an honorable discharge from the army in 1919. It was alleged that on or about May 1, 1939, there was a vacancy in the office of patrolman in the city of Coffeyville. Plaintiff alleged facts which tended to show that under the terms and provisions of chapter 144 of the Laws of 1937, and under the soldiers' preference law, G. S. 1935, 73-201, plaintiff was prima facie entitled to the appointment to fill such vacancy. It was further alleged that June 1, 1939, the defendant, Arthur Henry, subscribed to the oath of office as patrolman, and ever since has acted in that capacity; that no record was ever made showing that the city commission ever appointed the defendant, Arthur Henry, to the position of patrolman.

The defendants in their answer assert that chapter 144 of the Laws of 1937, being the civil-service act under which plaintiff predicates his cause of action, violates the constitution of the state of Kansas and is void.

Section 1 of chapter 144, Laws of 1937, provides:

"All cities of the first class having a population of less than 25,000 inhabitants, situated in all counties in the state of Kansas, in which counties there is one city of the first class and not more than three cities of the second class, one of which has a population of more than 10,000, and which city of the first class is operating under the commission form of government, shall appoint by ordinance three civil-service commissioners who shall hold office, one until the first Monday in April in the second year after his appointment, one until the

first Monday in April in the third year after his appointment, one until the first Monday in April in the fourth year after his appointment: *Provided, however,* That not more than two members of said civil-service commission shall be members of the same political party."

Section 17, article 2 of the constitution, provides:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted; and whether or not a law enacted is repugnant to this provision of the constitution shall be construed and determined by the courts of the state."

The purpose of the constitutional provision has often been pointed out by this court. In *Anderson v. Cloud County,* 77 Kan. 721, 95 Pac. 583, it was said:

"The inherent vice of special laws is that they create preferences and establish irregularities. As an inevitable consequence their enactment leads to improvident and ill-considered legislation. The members whose particular constituents are not affected by a proposed special law become indifferent to its passage. It is customary, on the plea of legislative courtesy, not to interfere with the local bill of another member; and members are elected and reëlected on account of their proficiency in procuring for their respective districts special privileges in the way of local or special laws. The time which the legislature would otherwise devote to the consideration of measures of public importance is frittered away in the granting of special favors to private or corporate interests or to local communities. Meanwhile, in place of a symmetrical body of statutory law on subjects of general and common interest to the whole people, we have a wilderness of special provisions whose operation extends no further than the boundaries of the particular school district or township or county to which they were made to apply. For performing the same services the sheriff or register of deeds or probate judge of one county receives an entirely different compensation from that received by the same officer of another county. The people of one community of the state are governed as to many subjects by law wholly different from those which apply to other localities. Worse still, rights and privileges which should only result from the decree of a court of competent jurisdiction, after a full hearing and notice to all parties in interest, are conferred upon individuals and private corporations by special acts of the legislature without any pretense of investigation as to the merits or of notice to adverse parties." (p. 730.)

Section 1 of chapter 144, Laws of 1937, specifies that the act applies to (1) all cities of the first class (2) having a population of less than 25,000 inhabitants, (3) situated in counties where there is one city of the first class, and (4) not more than three cities of the second class, and (5) one of which has a population of more than 10,-000, and (6) which city of the first class is operating under the commission form of government.

By a process of inclusion and exclusion, the statute points to the city of Coffeyville, and none other. While the act purports to be' general in nature, it is specific in fact. It was designed to apply to one city, and there is slight probability it will ever have uniform operation throughout the state. Few cities, if any, will ever fit the specifications. A classification so framed is illusory. By a multiplication of exclusionary provisions statutes may be formulated, which, though general in form, would in fact be applicable only to some particular city in the state. However desirable a civil-service law might be, based on a reasonable classification and with uniform operation throughout the state, certainly the general welfare would not be promoted by the enactment of a multitude of specific statutes' of the same general type, but with endless variations. Other cities in other counties, nay, other cities in some county could, and doubtless would, importune the legislature for a particular law. Thus the spirit, if not the letter, of the constitution would be violated.

Not only were the evils flowing from special legislation guarded against by section 17, article 2 of the constitution, but by section 1, article 12, it was provided that the legislature shall pass no special' act conferring corporate powers. This latter section applies to municipal as well as other corporations. (*City of Wyandotte v. Wood,* 5 Kan. 603.) Furthermore, section 17, article 2, as originally adopted, was at the general election of 1906 amended by the addition of the clause directly putting the burden on the courts to determine whether an act is repugnant to that provision of the constitution.

Clearly this court has a duty to perform, and however delicate the task may be, it is not to be evaded. The question presented is whether a fundamental principle of our basic law so carefully formulated and guarded by our fathers is to be frittered away by acts formulated for the palpable purpose of its evasion. We think not. While it is impossible to say just where the line is to be drawn in all cases, we are clear that chapter 144, Laws of 1937, contravenes the constitution and is void. See *State, ex rel., v. Deming,* 98 Kan. 420, 158 Pac. 34; *Stevens v. McDowell,* post, p. 316, 98 P. 2d 123 (this day decided) and cases cited.

Our attention is directed to section 2, article 15 of the constitution, which provides that the legislature shall not create any office the tenure of which shall be longer than four years. The civil-service law applicable to Coffeyville provides for the appointment of a

patrolman for four years; when the term ends the incumbent is at once placed on the eligible list without further examination and the commissioners are required to reappoint such officer. It is argued that these provisions will perpetuate the appointee in office in violation of the constitutional provisions. As we have found the act void under section 17, article 2, it is unnecessary to determine this grave question.

Was the plaintiff entitled to the appointment as patrolman under the soldiers' preference act? G. S. 1935, 73-201, provides:

"In grateful recognition of the services, sacrifices and suffering of persons who served in the army and navy of the United States in the War of the Rebellion, the Spanish-American war, and the great World War of 1914-'19, and have been honorably discharged therefrom, they shall be preferred for appointments and employed to fill positions in every public department and upon all public works of the state of Kansas, and of the counties, cities and towns of this state, if competent to perform such services; and the person thus preferred shall not be disqualified from holding any position in said service on account of his age or by reason of any physical or mental disability, provided such age or disability does not render him incompetent to perform the duties of the position applied for; and when any such ex-soldier or sailor shall apply for appointment to any such position, place, or employment, the officer, board or person whose duty it is or may be to appoint a person to fill such place shall, if the applicant be a man of good reputation, and can perform the duties of the position applied for by him, appoint said ex-soldier or sailor to such position, place or employment: *Provided,* That the provisions of this act shall not be applicable to any persons classed as conscientious objectors."

This court has been called upon to construe this statute many times. In *Dever v. Humphrey,* 68 Kan. 759, 75 Pac. 1037, the proceeding was to determine who was entitled to the office of city attorney of Junction City. Dever was a veteran, but the mayor appointed one Humphrey. In deciding the case, the court said:

"The duty of investigating and determining as to the qualifications of applicants for public position is placed upon the appointing power—in this case upon the mayor. He did make inquiry and decided that the plaintiff did not possess equal qualifications for the office with defendant. That decision, which appears honestly to have been made, is not open to review or revision by the courts. The legislature has placed the authority of making appointments mainly in the administrative officers and boards, and vested them with a discretion and judgment to determine who is best qualified to serve the public, and the general rule in such cases is that the courts cannot supervise the exercise of such authority, nor control the discretion and judgment so vested." (p. 763.)

In *State v. Addison*, 78 Kan. 172, 96 Pac. 66, it was held as stated in the syllabus:

"The power to appoint carries with it a presumption that the appointing officer has knowledge of the service to be performed and its requirements; also, the power of deciding the question of the competency of the applicants for the service.

" 'Competent' is necessarily a comparative word, and the degree of competency required of applicants by the appointing power is also necessarily discretionary. The utmost good faith, however, is demanded in determining the qualification of applicants under the ex-soldier's preference law." (Syl. ¶¶ 3, 4.)

In the answer of defendants it is stated:

"VIII. The defendant commissioners for a further answer allege that they have considered the application of the said Harry Owens for the position of patrolman and his competency to act in that behalf, and have in good faith concluded and now are of the opinion that he is not competent to hold said position and that they have also considered the application of the said Arthur Henry and his competency to act as patrolman, and have concluded and now are of the opinion that he is competent and well qualified to perform said duties and that it would be for the best interests of the city of Coffeyville and of the police department that said Arthur Henry be appointed to the said vacant position of patrolman, and said defendants allege that it will be for the best interests of the city and for the efficiency and well-being of said department that the said Arthur Henry be appointed to said position."

It was stipulated by the parties:

"2. That at the time of the appointment neither the mayor nor any of the defendant commissioners knew that said Owens was a soldier of the World War.

"3. That the plaintiff, Harry Owens, is an honorably discharged soldier of the World War and that he is not a conscientious objector.

"4. That the records of the defendant city do not show that said defendant, Arthur Henry, was ever appointed to the police department of said city by the board of commissioners, and that said appointment was made by the mayor of said city and has not been confirmed by said board; that the records of the city further show that Arthur Henry subscribed to the oath of office on June 1, 1939, and ever since said time has been performing all of the duties of a patrolman; that his name appeared on the pay roll as patrolman on June 19, 1939, and said pay roll was approved by all of the commission on said date."

The petition alleges that the defendant Arthur Henry "is a police officer of Coffeyville, Kan., wrongfully appointed thereto," that he subscribed to an oath in writing to perform his duties; that he performs the duties and functions of a patrolman and that his name appears on the pay roll. It is further alleged that notwithstanding defendant Henry performs the duties and functions of a police officer, no resolution appears in the records of the city appointing him as patrolman.

Our statute, G. S. 1935, 60-1602, provides that an action in quo warranto will lie:

"First, when any person shall usurp, intrude into or unlawfully hold or exercise any public office, . . ."

Under the facts stipulated by the parties, it appears that the defendant was duly appointed to the office of patrolman by the mayor, but has not been confirmed by the board; that he has subscribed to the oath of office and has been performing the duties of his office; that his name appears on the pay roll and that the pay roll was approved by the commission.

To oust the defendant, the statute requires a showing that the defendant has usurped, and that he unlawfully holds, his office. It is not shown that the mayor in making the appointment and the commissioners in approving the pay roll did not act in good faith. It is evident that the only reason the board did not confirm the appointment was because of the doubt as to their right to do so under the civil-service act and the soldiers' preference law.

Under the soldiers' preference statute, and under the decisions of this court construing that act, the fact that the plaintiff is an ex-soldier does not compel his appointment. He must also be competent, and the duty of determining whether he is competent rests with the city commission. The answer alleges the commission, after an investigation in good faith, determined the plaintiff is not competent, and that the defendant Henry is competent, and that it is for the best interest of the city and the police department that Henry be appointed. Under the agreed statement of facts the appointment of the defendant appears complete except as to his confirmation by the commission.

The power to make the appointment must rest in some officer or in some official body. When honestly and fairly made, the appointment is not subject to review by the courts. The courts cannot supervise the exercise of such authority, nor control the judgment so vested. No reason appears in this record why the appointment of the defendant should not be approved by the board of commissioners.

The judgment for ouster prayed for in the petition against the defendant Henry is denied, and the action is dismissed.