No. 96,414

STATE OF KANSAS *ex rel.* WILLIAM SLUSHER and RALPH SORRELL, *Appellants/Cross-appellees*, v. CITY OF LEAVENWORTH, GREG BAKIAN, LEE DOEHRING, and GARY ORTIZ, *Appellees/Cross-appellants*.

(172 P.3d 1154)

Opinion filed December 14, 2007.

*Lawrence G. Rebman,* of Rebman & Associates L.L.C., of Kansas City, Missouri, argued the cause and was on the briefs for the appellants/cross-appellees.

*Teresa L. Watson,* of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause and was on the briefs for the appellees/cross-appellants.

The opinion of the court was delivered by

JOHNSON, J.: This action in mandamus by William Slusher and Ralph Sorrell (relators) to compel the City of Leavenworth (City) to apply the veteran's preference statute, K.S.A. 73-201, to promotions within the Leavenworth Police Department (LPD) returns to our court for a second time. See *State ex rel. Slusher v. City of Leavenworth,* 279 Kan. 789, 112 P.3d 131 (2005) (hereafter *Slusher I*). In this appeal, the relators complain that, although the district court granted them summary judgment with regard to the applicability of the veteran's preference, it should have ordered the City to promote them without further proceedings and should have awarded them damages and attorney fees. The respondents, City of Leavenworth, Greg Bakian, Lee Doehring, and Gary Ortiz, cross-appeal, claiming that the veteran's preference statute is unconstitutional and that the relators did not exhaust their administrative remedies. Further, respondents moved for a dismissal of Sorrell's appeal, claiming that it was now moot. We affirm the district court's rulings on the mandamus petition and deny respondents' cross-appeal and motion.

The genesis of this action was a vacancy in a lieutenant's position and a vacancy in a sergeant's position on the LPD. Slusher, a sergeant with the LPD, applied for the lieutenant's position; Sorrell, an LPD officer, applied for the sergeant's position. Both met the initial application requirements for the respective positions, and both were veterans within the purview of the veteran's preference statute. Neither was selected for a promotion; the successful applicants were not veterans.

In response to inquiries, Bakian, the City's personnel director, informed both relators that the veteran's preference applies only to initial hiring and, thus, was inapplicable to their applications for promotion. Doehring, the police chief, and Ortiz, the city manager, reiterated Bakian's interpretation that the veteran's preference statute did not apply to promotions.

Slusher and Sorrell subsequently filed a petition for writ of mandamus in the district court, alleging that they had been denied their respective promotions in violation of the veteran's preference in K.S.A. 73-201, and seeking an order compelling the LPD to promote them accordingly. The district court dismissed the petition, finding that the petition failed to state a claim upon which relief could be granted because K.S.A. 73-201 only applies to initial hiring, not promotions. Further, the district court found that mandamus was not an appropriate remedy because application of the veteran's preference statute involves the exercise of discretionary authority which cannot be the subject of a mandamus action.

Slusher and Sorrell appealed, and the matter was transferred to this court from the Court of Appeals. *Slusher I*, 279 Kan. at 790. *Slusher I* limited the opinion to the procedural posture of the case at that time. First, the court interpreted K.S.A. 73-201 to apply "to internal promotions as well as to initial hiring." 279 Kan. at 796. The court then noted that mandamus is "a proper remedy where the essential purpose of the proceeding is to obtain an authoritative interpretation of the law for the guidance of public officials in their administration of the public business, notwithstanding the fact that there also exists an adequate remedy at law. *Wilson v. Sebelius*, 276 Kan. 87, 90, 72 P.3d 553 (2003)." 279 Kan. at 797.

Finally, the court noted that "[m]andamus also is a proceeding used for compelling a public officer to perform a clearly defined duty, one imposed by law and not involving the exercise of discretion. *Sedlak v. Dick*, 256 Kan. 779, 785, 887 P.2d 1119 (1995)." 279 Kan. at 797. By pointing out that, in addition to defining which veterans are covered by the preference, K.S.A. 73-201 contains two eligibility requirements—competence to perform the job duties and good reputation—the court intimated that the application of the statute involves the exercise of discretion. However, given that a dismissal due to failure to state a claim is considered solely on the pleaded facts of the petition, the court suggested that the exercise of discretion was not yet an issue in the case, so as to preclude the mandamus procedure. 279 Kan. at 797-98. The matter was remanded to the district court for further proceedings.

Upon remand, the district court found that, pursuant to the Supreme Court's interpretation of K.S.A. 73-201, the City had no discretion as to whether to give meaningful preference to qualified veterans. Rather, the City had a clearly defined duty to consider the veteran's preference in its employment decisions relating to Slusher and Sorrell. Thus, the district court ruled that the "[f]ailure to do so requires [the district court] to order that the respondents make the promotion opportunities available to the relators and to properly apply the requirements of K.S.A. 73-201 in that process."

However, the district court opined that *Slusher I* left open the possibility that the relators' competence or good reputation might be disputed issues, the determination of which involves the exercise of discretionary authority so as to preclude mandamus relief. The court noted that the relators' good reputation was not in dispute but found that a dispute did exist as to their competence. Accordingly, the district court refused relators' request for a ruling that they were entitled to their respective promotions, as a matter of law.

In making its order, the district court cautioned that the relators were entitled to a "meaningful preference in the process." In that regard, the district court rejected respondents' suggestion that "competency" is the equivalent of "best qualified" because that definition effectively "eviscerates the preference," *i.e.*, the best

qualified applicant has no need for preferential treatment. Likewise, the district court rejected the relators' contention that meeting the minimum job qualifications satisfies the statutory competency requirement. The court opined that the statutory standard of competency lies somewhere in between, stating that it means "something more than meeting the minimum qualifications for the job," but "something less than having qualifications equal to or better than any other candidate." To guide the City, the court pointed to language in *The State v. Addison*, 76 Kan. 699, 707, 92 Pac. 581 (1907) (*Addison I*), which stated: " 'Competent,' when used to indicate the qualifications which a public officer should possess, must necessarily include every qualification essential to the prompt, efficient and honest performance of the duties pertaining to the office to be filled."

Although the district court's journal entry purports to enter summary judgment for the relators, only a portion of the petitioners' prayers were granted. The relators obtained a favorable statutory interpretation but were denied the remedies which they sought. As noted above, the district court did not simply order the City to promote the relators, as they requested. Likewise, the district court rejected the relators' claims for damages and for attorney fees. The relators appeal these adverse rulings.

## COURT-ORDERED PROMOTIONS

In their first two issues, the relators essentially argue that the district court had before it everything that it needed to order the City to promote them forthwith, *i.e.*, that they were entitled to the promotions as a matter of law. We disagree.

### Standard of Review

First, we note the parties do not concur on our standard of review. The disparity is understandable given the unusual nature of the case. The respondents advocate for the application of the well-settled review standard for summary judgments. See, *e.g.*, *Korytkowski v. City of Ottawa*, 283 Kan. 122, 128, 152 P.3d 53 (2007). However, this appeal deals with the relators' requests which were omitted from the summary judgment, or more accurately the partial summary judgment, in their favor. In arguing for a de novo

review, the relators cite to *Stith v. Williams*, 227 Kan. 32, 34, 605 P.2d 86 (1980). However, the *Stith* standard of review applies when the district court determines a case based upon documents and stipulated facts, which is not entirely the instant case. Moreover, the action was styled as a petition for writ of mandamus. "Whether mandamus lies is dependent upon an interpretation of the applicable procedural and substantive statutes, over which this court has unlimited review. See *Williamson v. City of Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003)." *Lynn v. Simmons*, 32 Kan. App. 2d 974, 976, 95 P.3d 99 (2003).

Here, the overarching question involves the interpretation and application of the veteran's preference statute, which is a question of law subject to unlimited review. See, *e.g.*, *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

*Applicable Statute*

In Kansas, a veteran's preference is afforded in K.S.A. 73-201, which states:

"In grateful recognition of the services, sacrifices and sufferings of persons who served in the army, navy, air force or marine corps of the United States in world war I and world war II, and of persons who have served with the armed forces of the United States during the military, naval and air operations in Korea, Viet Nam or other places under the flags of the United States and the United Nations or under the flag of the United States alone, and have been honorably discharged therefrom, *they shall be preferred for appointments and employed to fill positions in every public department and upon all public works of the state of Kansas, and of the counties and cities of this state, if competent to perform such services;* and the person thus preferred shall not be disqualified from holding any position in said service on account of his age or by reason of any physical or mental disability, provided such age or disability does not render him incompetent to perform the duties of the position applied for; *and when any such ex-soldier, sailor, airman or marine shall apply for appointment to any such position, place, or employment, the officer, board or person whose duty it is or may be to appoint a person to fill such place shall, if the applicant be a man or woman of good reputation, and can perform the duties of the position applied for by him, or her, appoint said ex-soldier, sailor, airman or marine to such position, place, or employment: Provided,* That the provisions of this act shall not be applicable to any persons classed as conscientious objectors. The provisions of this act shall not be controlling over the provisions of any statute, county resolution or city ordinance relating to retirement, or termination on the basis of age, of employees of the state or any

county or city. Whenever under any statute, county resolution or city ordinance retirement, or termination on the basis of age, of any employee is required at a certain age, or is optional with the employer at a certain age, such provisions of such statute, resolution or ordinance shall be controlling and shall not be limited by this section." (Emphasis added.)

Initially, the statute required that eligible veterans receive preference "over other persons of equal qualifications" and required the appointing authority to "make an investigation as to the qualifications of said ex-soldier or sailor for such employment." G.S. 1901, 6509. The statute was amended, deleting the language for preference "over other persons of equal qualifications" and substituting the language, "if competent to perform such services," which remains in the current version of the statute. L. 1907, ch. 374, sec. 1; K.S.A. 73-201. The language requiring the appointing authority to make an investigation into the veterans' qualifications was deleted and not replaced by other language. L. 1907, ch. 374, sec. 1. Subsequent amendments have dealt with defining which veterans were covered by the preference.

*Analysis*

Relators begin by declaring that the district court found that the respondents

"illegally denied Relators the benefit of K.S.A. 73-201 by: 1) denying them the benefit because they interpreted the statute to apply to initial hires only; 2) denying them the benefit because they unreasonably interpreted the statute to require that Relators have qualifications equal to all other candidates; and 3) employing a process that did not give Relators meaningful preference."

The obvious flaw with the second and third alleged "findings" is that the City, having determined the statute inapplicable to promotions, never reached the point of interpreting how to apply the preference to Slusher and Sorrell and did not employ any process with respect to the preference.

Relators then leap to the conclusion that the City's violation of the statute required the district court to grant them the relief they requested, including ordering the City to promote them. Such a conclusion would require a mechanical application of the veteran's preference statute, utilizing a bright-line, court-determined definition of competence to determine that a veteran meeting mini-

mum job qualification requirements automatically gets the job, *i.e.*, to construe the statute as providing an absolute entitlement rather than a preference. While the statutory language might lend support for such a strict application of the preference, our prior cases have opined that public policy considerations, and perhaps constitutional restrictions, dictate against such an approach.

Prior to the 1907 statutory amendments, *Dever v. Humphrey*, 68 Kan. 759, 75 Pac. 1037 (1904), declared that hiring decisions made fairly and honestly upon a good faith investigation of qualifications would not be open to review or revision by the courts. As rationale for such judicial restraint, *Dever* stated:

"The legislature has placed the authority of making appointments mainly in the administrative officers and boards, and vested them with a discretion and judgment to determine who is best qualified to serve the public, and the general rule in such cases is that the courts cannot supervise the exercise of such authority, nor control the discretion and judgment so vested. [Citations omitted.]" 68 Kan. at 764.

*Addison I*, the first case decided after the 1907 statutory amendments, considered whether the new Veteran's Preference Act language should be read literally so as to eliminate the discretion previously afforded to the hiring authority. The court opined:

"How or where these questions, so important to the veteran applicant, are to be determined, cannot be ascertained from the express terms of the statute. The duty of ascertaining whether these legal requirements exist or not naturally belongs to the appointing power, and to place this duty there would appear to be so eminently appropriate that under ordinary circumstances it would be assumed at once that the statute so intended, and the omission expressly so to state would be supplied by implication. A peculiar difficulty, however, stands in the way of such an interpretation of this statute. The former enactment expressly provided that the officer, board or person whose duty it was to make the appointment should, before any appointment was made, make an investigation as to the qualifications of the veteran applicant. The present law repeals this provision and does not provide in any way for the performance of this duty. From this it might be argued that it was intended to withdraw the performance of this duty from such tribunal, or to dispense with an investigation altogether. Either of these conclusions would leave the statute shorn of its most important features and would probably destroy its validity. Both should, therefore, be avoided, and some interpretation adopted, if possible, which will sustain the law. It seems clear from the language of the statute as it now stands that the legislature intended to confer this preference upon such veterans as might possess the prescribed requirements. In

the absence of any provision to the contrary it may be held that the duty of determining all questions involved in making such appointments belongs to the appointing power, notwithstanding the repeal of the former act.

"We conclude, therefore, that the real purpose of the later act was not so much to change the old law with reference to the investigation and determination of the claims of applicants thereunder as to change the standard of qualifications required. Under the former act the applicant was required to possess qualifications equal to his competitors. Now it is sufficient if he is merely competent and able to perform the duties of the office.

"The meaning of the word 'competent,' as used in this statute, is not very clear. To ascertain the signification intended reference may be made to the subject-matter about which it is used. 'Competent,' when used to indicate the qualifications which a public officer should possess, must necessarily include every qualification essential to the prompt, efficient and honest performance of the duties pertaining to the office to be filled. A law which means less than this cannot stand. The maintenance of an efficient public service in all the departments of the government is a matter of paramount importance. Desirable as it may be to confer special public favors upon the rapidly disappearing patriots of this state, it cannot be done at a sacrifice of the public welfare." 76 Kan. at 706-07.

When the same case returned to our Supreme Court, it clearly recognized that the hiring authority retained discretion in the application of the veteran's preference and that the courts should afford due deference to that exercise of discretion. *The State v. Addison*, 78 Kan. 172, 175, 96 Pac. 66 (1908) (*Addison II*) (" 'The determination of the appointing board or officer as to the qualifications of the applicant involves official discretion, and, when made fairly and in good faith, is final.' *The State v. Addison*, 76 Kan. 699, 707, 92 Pac. 584."). Subsequent cases reiterated the respective roles of the hiring authority and the courts. See, *e.g., Owens v. City of Coffeyville*, 151 Kan. 263, 269, 98 P.2d 415 (1940) (power to make the appointment rests with the hiring authority and is not subject to court review when honestly and fairly made; courts cannot supervise the exercise of discretionary authority "nor control the judgment so vested"); *Campbell v. Sargent*, 85 Kan. 590, 594-95, 118 Pac. 71 (1911) (duty of the appointing authority to investigate the qualifications of the veteran applicants); *Dever v. Platt*, 81 Kan. 200, 201-02, 105 Pac. 445 (1909) (court cannot interfere with hiring decision which is made in good faith and fairly).

Here, the City never exercised its discretion in relation to the Veteran's Preference Act, because it believed that K.S.A. 73-201 did not apply. The relators' contention that the district court should have usurped the hiring authority's power by ordering the City to promote them runs counter to a century of judicial restraint. Likewise, the suggestion that we should, at this late date, interpret K.S.A. 73-201 as precluding the City's exercise of discretion ignores that the legislature has not taken any action in the 100 years since *Addison I* to counter the Supreme Court's interpretation of the veteran's preference statute. Thus, we find that the district court's order for the City to reopen the hiring process and apply a meaningful veteran's preference for Slusher and Sorrell was the correct remedy in this case.

*Competence*

Although intertwined with the foregoing discussion, relators raise as a separate issue the district court's refusal to declare them to be "competent" within the meaning of the veteran's preference statute. Such a ruling would have been neither legally nor factually supportable.

Relators commence by reminding us of the rules for statutory construction, including the premise that the legislature is presumed to ascribe the ordinary and common meaning to the words that it uses. See *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). They then argue that the district court should have used the dictionary definition of "competent," rather than relying on the explanation in *Addison I.* However, again, any argument that *Addison I* or its progeny misinterpreted legislative intent is negated by the legislature's failure to rectify the alleged misinterpretation, notwithstanding the numerous amendments it has subsequently made to other provisions in the statute.

Next, the relators contend that the record before the district court on summary judgment revealed no material dispute as to the relators' competence. We do not read the record as being so clear-cut. For instance, Slusher's internal evaluations while a sergeant criticized his computer skills, and Sorrell was relatively unknown to newer officers because of his assignment outside the department.

Nevertheless, the point is that the courts should not be making the initial determination of competency because, as we discussed above, that discretion lies with the hiring authority. *Addison II* clarified that "competent" is "always a comparative term" which should "be construed in the sense of fully capable of adequately rendering all the services which the welfare of such a city demands." 78 Kan. at 178. The hiring authority, rather than the court, is in the best position to perform that analysis, constrained only by the requirement that it act fairly, honestly, and in good faith.

We pause briefly to clarify that we do not believe that *Addison II's* reference to competence being a "comparative term" was meant to resurrect the equal qualifications paradigm whereby the qualifications of one applicant is compared to another. Rather, it refers to comparing the veteran's qualifications to the skills and experience necessary to efficiently perform the duties of the new position sought. For instance, a police officer assigned to patrol may be unquestionably the best patrol officer in the department, yet, if the officer lacks the skills necessary to effectively and efficiently supervise others, he or she may not be comparatively competent for a promotion to a supervisory position.

The relators also challenge the district court's suggestion that mandamus was an inappropriate vehicle to challenge the discretionary determination of competency. They cite to *National Mutual Casualty Co. v. Hobbs*, 149 Kan. 625, 88 P.2d 1006 (1939), where the Supreme Court reversed the issuance of a writ of mandamus because the evidence was insufficient to establish that the public official's act involved an abuse of discretion. When read in its entirety, *Hobbs* does not support the relators' contention that discretionary acts are properly subject to mandamus. To the contrary, mandamus may not be invoked to control discretion. See *Willis v. Kansas Highway Patrol*, 273 Kan. 123, 127, 41 P.3d 824 (2002). The determination of competency under the Veteran's Preference Act is a discretionary decision. The district court correctly opined that it was inappropriate to control the City's discretion by finding the relators competent as a matter of law.

Finally, the relators attempt to transform the discretionary nature of the competency determination into a mandatory act by

arguing that the City's ordinances established a level of competence for the positions. The ordinances established the procedures for developing a certified listing of eligible candidates but did not purport to define competence for the particular sergeant and lieutenant positions. Simply put, the argument is unavailing, and the relators' reliance on *Goodrich v. O'Neill*, 85 Kan. 595, 117 Pac. 1016 (1911), is misplaced.

## DAMAGES

The relators complain that the district court declined to award them damages for the City's violation of the Veteran's Preference Act. The statute governing mandamus has a specific provision for damages which states: "*Damages*. If judgment be given for the plaintiff, he or she may also recover such damages as he or she may have sustained by reason of the failure of the defendant to perform the specified duty, together with costs." K.S.A. 60-802(c).

The relators' arguments suggest that we should review the matter de novo. However, the statute uses the word "may" which is normally associated with a discretionary function. See *Corder v. Kansas Board of Healing Arts*, 256 Kan. 638, 661, 889 P.2d 1127 (1994) (the decision whether to grant damages is discretionary). Furthermore, "the question of damages in a mandamus action requires a consideration of the motives of the actor in failing to act." 256 Kan. at 661.

The district court based its damage ruling on two bases. First, the court noted that, until the City made its determination of whether relators were competent to perform the duties of the respective positions, the court could not know whether the relators sustained any damages. In other words, if the relators were not entitled to the promotions, after being afforded a meaningful preference, then they did not sustain damages by reason of the City's failure to apply the veteran's preference statute.

We agree with the district court's logic. Perhaps more fundamentally, however, the statute conditions the damage award upon judgment being given for the plaintiff. At this point, the relators have not been given judgment upon their claim that they are entitled to the promotions, and we have determined here that the

district court was correct in not granting the promotions as a matter of law.

Secondly, the district court opined that it could not determine the measure of damages from the record before it. Contrary to the relators' attempt to argue otherwise, the compensation information provided, over objection, by the City during discovery is not uncontroverted. Further, the information appears inadequate to definitively and accurately calculate the relators' damage claim.

The district court's refusal to award damages was well-founded and correct. The ruling is affirmed. See *In re Marriage of Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006) (judicial discretion abused only when action taken is arbitrary, fanciful, or unreasonable).

## *ATTORNEY FEES*

The relators point out that K.S.A. 60-802(c) authorizes the award of attorney's fees as damages in a mandamus action upon a finding that the public official's refusal to perform a duty was unreasonable. They correctly concede that the denial of fees is reviewed for an abuse of discretion, citing to *Knuth v. State Farm Mut. Auto. Ins. Co.*, 30 Kan. App. 2d 184, 185, 41 P.3d 287 (2000).

The relators give their attorney fee claim a great deal of efficacy by declaring that "the District Court found and as established above, Respondents acted in an unreasonable and/or arbitrary manner when they determined that K.S.A. 73-201 required equal qualifications." However, the argument begins to evanesce when one considers the accuracy of the relators' declaration.

We first note that the City's action was to refuse to apply the veteran's preference of K.S.A. 73-201 to Slusher and Sorrell based upon its opinion that the preference did not apply to promotions. Although the relators may have perceived the City's arguments before the district court as promoting an equal qualifications interpretation of the statute, that was not the basis of the City's refusal to perform a duty.

More to the point, the relators fail to provide a record citation to corroborate that the district court found respondents' actions to be unreasonable and/or arbitrary. The omission is understandable, given that such a cite does not exist. The labeling of the City's

actions as unreasonable and arbitrary appears to be the relators' characterization, rather than the court's finding. Rather, the district court specifically said that "respondents' misinterpretation of the law in this case was not the product of bad faith."

The relators do acknowledge the district court's finding of no bad faith, but urge us to reweigh the evidence and countermand that factual finding. We decline to do so on the basis of our review standard. See *LSF Franchise*, 283 Kan. at 19 (we review factual findings to determine if they are supported by substantial competent evidence). However, we would note that relators' factual arguments are less than persuasive and their other arguments in favor of awarding attorney fees are unavailing.

## CROSS-APPEAL

### CONSTITUTIONALITY OF K.S.A. 73-201

In *Slusher I*, we observed that respondents had not challenged the constitutionality of K.S.A. 73-201. Upon remand to the district court, the respondents specifically argued against the statute's constitutionality.

Upon appeal, respondents contend the statute violates the Privileges and Immunities Clause found in the Kansas Constitution Bill of Rights, § 2, which says that "[n]o special privileges or immunities shall ever be granted by the legislature, which may not be altered, revoked or repealed by the same body." Additionally, they argue that applying the statute to promotions violates the due process and equal protection guarantees of both state and federal Constitutions. We disagree, perhaps ironically finding that our interpretation of the statute to vest discretion in the hiring authority, as urged by the respondents, saves the veteran's preference from being constitutionally infirm.

We pause only briefly to state the obvious: appellate review of the constitutionality of a statute is a question of law over which we exercise unlimited review. See *Williams v. Natural Gas Co. v. Supra Energy, Inc.*, 261 Kan. 624, 629, 931 P.2d 7 (1997). Well-settled principles govern our task:

" ' "The constitutionality of a statute is presumed. All doubt must be resolved in favor of its validity, and before the act may be stricken down it must clearly

appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond a reasonable doubt." [Citation omitted.]' *State v. Whitesell*, 270 Kan. 259, 268, 13 P.3d 887 (2000)." *State v. Brown*, 280 Kan. 898, 899, 127 P.3d 257 (2006).

The respondents acknowledge that in *Goodrich v. Mitchell*, 68 Kan. 765, 75 Pac. 1034 (1904), the Supreme Court specifically found Kansas' veteran's preference statute to be constitutional. They attempt to discount the *Goodrich* decision as being relevant only to the pre-1907 version of the statute, because the opinion relied upon the statute's "theory of equality of qualifications." 68 Kan. at 770. The respondents also argue that *Addison I*, which applied the amended statute, only indirectly addressed the constitutionality of the veteran's preference statute by stating in dictum that the statute was not unconstitutional because it placed public good at the forefront and left discretion with the appointing authority.

However, the invalidity which *Goodrich* found that our statute avoided by providing for equal qualifications was that of "a statute, making the appointment of veterans compulsory, when the appointing power should think the applicants not qualified to perform the duties of the office sought." 68 Kan. at 770. By interpreting the 1907 amendments to vest discretion in the hiring authority to determine whether the veteran is competent to perform the duties of the office sought, as established in *Addison I* and its progeny, K.S.A. 73-201 continues to avoid constitutional infirmity.

Respondents make the additional argument that, by interpreting K.S.A. 73-201 to include promotions in *Slusher I*, this court rendered the statute unconstitutional on due process and equal protection grounds. As the district court pointed out, to accept respondents' argument, one must find that the Kansas Supreme Court ignored the premise that statutes should be construed so as to be constitutional, if possible, and abandoned its duty to uphold, rather than to defeat, the constitutionality of legislative enactments. We do not believe that to be the case.

Even though *Slusher I* stated that the constitutionality of K.S.A. 73-201 was not raised by the parties, it nevertheless considered the respondent's citation to *Housing Auth. v. Pa. Civil Service Com'n*, 556 Pa. 621, 625, 730 A.2d 935 (1999), "as standing for the Pennsylvania court's recognition of constitutional difficulties arising from the application of a veterans' preference to promotions." *Slusher I*, 279 Kan. at 793. *Slusher I* opined that the "Pennsylvania court's reasoning is overly narrow." 279 Kan. at 793. A reasonable interpretation of *Slusher I* is that the court considered, and rejected, the argument that construing K.S.A. 73-201 to apply to promotions renders it unconstitutional. Respondents fail to persuade us otherwise the second time around.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Respondents claim that the relators failed to invoke the subject matter jurisdiction of the district court by failing to exhaust their administrative remedies. Apparently, Slusher did not commence the grievance procedure, and Sorrell stopped short of exhausting his remedies when he failed to appeal to the City's Civil Service Commission.

An allegation that a party failed to exhaust his or her administrative remedies is a question of law over which we have unlimited review. *Cole v. Mayans*, 276 Kan. 866, 869, 80 P.3d 384 (2003).

"Generally, an agency should be given the first opportunity to exercise its discretion or special expertise. When an administrative remedy is provided by statute, such a remedy must ordinarily be exhausted before a party can bring the matter before the courts. However, if no agency remedy is available or when it is inadequate, exhaustion is not required." 276 Kan. at 869 (citing *NEA-Coffeyville v. U.S.D. No. 445*, 268 Kan. 384, 389, 996 P.2d 821 [2000]).

*Slusher I* implicitly ruled on this question when it found that mandamus was appropriate because relators sought an authoritative interpretation of the law for the guidance of public officials. 279 Kan. at 796-97. The respondents do not and cannot point to any part of the grievance procedure whereby the relators could obtain such a remedy. As the district court stated: "Obtaining an authoritative interpretation of the law is not something the relators were entitled or required to pursue through administrative reme-

dies. Without obtaining authoritative interpretation of the law, whatever administrative remedies were available to the relators were essentially meaningless."

We affirm the district court's determination that, given the relief sought, the relators' failure to exhaust their administrative remedies was not fatal to their petition for writ of mandamus.

### MOOTNESS

This case was docketed in the Court of Appeals. Respondents filed a motion with the Court of Appeals to dismiss Sorrell's appeal as moot. An affidavit from the Chief of Police was attached to the motion stating that Sorrell was promoted to sergeant on December 14, 2006, after he applied for a subsequent opening. Therefore, the respondents argued that there was no controversy, and the only judgment that could be entered as to Sorrell was moot.

An appeal will not be dismissed for mootness unless it is clearly and convincingly shown that the actual controversy has ended and the only judgment that could be entered would be ineffectual for any purpose and an idle act insofar as rights involved in the case are concerned. *In re M.R.*, 272 Kan. 1335, 1339, 38 P.3d 694 (2002).

As Sorrell argued in response, the appeal included the issue of whether he should have been awarded damages for the City's failure to apply the veteran's preference statute. The claimed damages were predicated on the loss of additional income from the date of the denial of the first promotion. Thus, his subsequent promotion did not end the controversy as to damages and attorney fees.

Affirmed.

DAVIS and NUSS, JJ., not participating.

MCANANY and HILL, JJ., assigned.