NOT DESIGNATED FOR PUBLICATION

No. 117,631

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BRANDIE PRIEBA,
*Appellee*,

v.

JERRY QUINCEY KEELER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; NOLA TEDESCO FOULSTON, judge pro tem. Opinion filed April 20, 2018. Reversed and remanded.

*Jerry Quincey Keeler*, appellant pro se.

No appearance by appellee.

Before LEBEN, P.J., GARDNER, J., and BURGESS, S.J.

PER CURIAM:  The Protection from Stalking Act requires the district court to inform the parties, at the hearing, of their right to representation by counsel. K.S.A. 2016 Supp. 60-31a05(a). If the district court fails to do so, the order must be reversed. *Walker v. Brizendine*, No. 114,776, 2016 WL 5012505, at *3 (Kan. App. 2016) (unpublished opinion).

Brandie Prieba filed a petition for a protection from stalking order against Jerry Quincey Keeler in February 2017. A temporary order of protection from stalking was filed and a final hearing was set. Prieba and Keeler attended the hearing pro se. The

1

district court did not inform the parties of their right to counsel. After hearing testimony and examining the evidence, the district court issued an order of protection from stalking against Keeler for the period of one year. Keeler appeals the district court's order. Due to the failure to advise the parties of the right to counsel, this case is reversed and remanded for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On February 15, 2017, Prieba filed a "Petition for Protection from Stalking Order" against Keeler with the Sedgwick County District Court. In the petition, Prieba alleged that Keeler would come to the bank where she worked as a teller, wait to be served by her, and would always make comments directed toward her like "'you sure are looking good today.'" Prieba also alleged that on the day before, Keeler brought her roses and a balloon. He also placed a box of chocolates and a card on her car which was parked outside the bank. Inside the card was $20 and a four-page letter where Keeler "talks about watching me walk to my car to get the items & previous times watching me leave in my car." The letter was understandably disturbing to Prieba and she stated that she was "scared and concerned for [her] safety."

The district court found that Prieba "established a prima facie case of stalking [enabling] the court to issue a temporary order of protection from stalking." The district court entered a "Temporary Order of Protection from Stalking" against Keeler. A hearing was set for March 2, 2017, and summons were issued.

On February 28, 2017, Keeler filed "Defendant's Request for Court Inspection of Documents." Attached to the filing was Keeler's affidavit and a copy of the letter he left on Prieba's vehicle. In his affidavit, Keeler stated that he never threatened, stalked, followed, telephoned, abused, or communicated with Preiba outside her workplace. Keeler also stated that no one informed him that Prieba was concerned with his contact or

2

that she wanted to be left alone. Keeler explained that he did not always wait to be served by her at the bank, usually was done with his bank business and left within 10 minutes, and that he stopped going to the branch where Prieba worked because he did not want her to get into trouble for talking to him. Keeler also identified what he gave Prieba on February 14, 2017, listing: a rose, a balloon, a heart full of chocolate candy, a card, and $20 so that she could buy a burger and fries. Keeler also said that that Prieba did not need an order of protection because "[he] already told her, [he] would not bother her anymore." Further, Keeler explained his reasoning behind no longer talking to Preiba at work and going to a different location to complete his bank business.

At the hearing on March 2, 2017, Prieba and Keeler both appeared pro se. An order of protection from stalking was entered for a period of one year against Keeler.

Keeler filed a notice of appeal on March 31, 2017. On May 22, 2017, Keeler filed a "Statement of No Transcript" which stated that "no Transcripts was used and will NOT be used, or ordered. In the filing of this appeal."

This court issued a show cause order directing Keeler to provide proof that no transcript existed or could be created or, in the alternative, to provide the transcript. As it turns out, Keeler was mistaken and the hearing was recorded. A transcript was ordered and included in the record of this appeal. The transcript largely repeats the information Prieba and Keeler recounted in their respective version of events.

SHOULD THIS COURT DECLINE TO ADDRESS KEELER'S ARGUMENTS AS MOOT?

Before addressing Keeler's arguments, this court must first determine whether the issues are moot. A case is moot when the controversy between the parties has ended and any judgment of the court would be ineffective. *State ex rel. Slusher v. City of Leavenworth*, 285 Kan. 438, 454, 172 P.3d 1154 (2007). The order of protection from

stalking was entered against Keeler on March 2, 2017, and was in force for one year. Therefore, as of March 2, 2018, the order is no longer in effect. Therefore, on its face, the issues raised in this appeal appear to be moot.

*Standard of Review*

As a general rule, Kansas appellate courts do not decide moot questions or render advisory opinions. *Skillett v. Sierra*, 30 Kan. App. 2d 1041, 1046, 53 P.3d 1234 (2002). "The mootness test has been described as a determination whether 'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights. [Citations omitted.]'" *Kaster v. Riley*, No. 117,008, 2018 WL 672106, at *4 (Kan. App. 2018) (unpublished opinion) (quoting *Wiechman v. Huddleston*, 304 Kan. 80, 84, 370 P.3d 1194 [2016]). This court exercises unlimited review over issues of mootness. *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012).

*Discussion*

A panel of this court has held that a finding that "a person is a stalker or involved in stalking behavior" can have long-term impacts on the person. A court's perception of an individual could be impacted by prior findings that the individual engaged in stalking behavior. *Kaster*, 2018 WL 672106, at *4. Under this analysis the issues raised in this case are not moot. See 2018 WL 672106, at *4.

WERE KEELER'S RIGHTS VIOLATED BECAUSE THERE WAS NO RECORDING OF THE INITIAL OR FINAL HEARING BEFORE PROTECTION FROM STALKING ORDERS WERE ISSUED?

*Initial hearing*

Keeler argues that the initial hearing was not recorded and that no transcript was available for him to use on appeal. However, there is no indication in the record on appeal that an initial hearing ever occurred. This is not surprising because under the protection from stalking act the court need not have a hearing to file a temporary protection from stalking order. K.S.A. 2016 Supp. 60-31a05(b).

The protection from stalking act requires the court to hold a hearing within 21 days after the filing of a petition for an order of protection from stalking. K.S.A. 2016 Supp. 60-31a05(a). A temporary order of protection from stalking may be ordered if the court "deems [it] necessary to protect the victim from being stalked. Temporary orders may be granted ex parte on presentation of a verified petition by the victim supporting a prima facie case of stalking." K.S.A. 2016 Supp. 60-31a05(b).

The clear purpose of the statute is to protect an individual from being stalked, while also ensuring that the rights of the accused are not infringed. As contemplated by the statute, quick action to get an order protecting a potential victim from stalking is important. The district court is able to file a temporary order based on the verified petition by the victim which supports a prima facie case of stalking. The statute does not require a hearing for this to occur. K.S.A. 2016 Supp. 60-31a05(b). If the court relies on the petition and no hearing occurs, there is no hearing that need be recorded for purposes of appeal. Instead, the petition itself serves as a record of what the district court relied on to reach its decision to enter a temporary protection order. See K.S.A. 2016 Supp. 60-31a05(b).

That is exactly what happened here, there was no initial hearing. Instead, the district court entered a temporary protection from stalking order based on Prieba's verified petition without a hearing. Because there was no hearing and no requirement that a hearing occur, Keeler's argument is unpersuasive.

*Final hearing*

In his brief, Keeler asserts that the final hearing was not recorded and that no transcript of the hearing was available for appeal. This court issued a show cause order directing Keeler to provide proof that no transcript existed or could be created or, in the alternative, to provide the transcript. As it turns out, Keeler was mistaken and the hearing was recorded. A transcript was ordered and has been made part of the record. Any claim by Keeler that failure to have a record of the hearing was somehow error is moot.

DID THE DISTRICT COURT ERR BY FAILING TO INFORM KEELER OF HIS RIGHT TO BE REPRESENTED BY COUNSEL AT THE FINAL HEARING?

Keeler's next argument is that the district court was required to advise him of his right to be represented by counsel at the final hearing and that the district court failed to do so.

*Standard of Review*

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 304 Kan. at 409. When there is no ambiguity, the court need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the legislature's intent. 304 Kan. at 409.

The statute in question states:

"Within 21 days of the filing of a petition under the protection from stalking act a hearing shall be held at which the plaintiff must prove the allegation of stalking by a preponderance of the evidence and the defendant shall have an opportunity to present evidence on the defendant's behalf. Upon the filing of the petition, the court shall set the case for hearing. At the hearing, the court shall advise the parties of the right to be represented by counsel." K.S.A. 2016 Supp. 60-31a05(a).

Keeler argues that the statute's use of the word "shall" requires the court to advise the parties of their right to counsel at the hearing. Keeler does acknowledge that in some cases "shall" can be read as directory, rather than mandatory.

A panel of this court has already addressed this issue, holding that, in the context of this statute, "shall" is mandatory. *Walker*, 2016 WL 5012505, at *3. Determining whether "shall" is mandatory or directory requires the court to examine four factors: "'(1) legislative context and history; (2) substantive effect on a party's rights versus merely form or procedural effect; (3) the existence or nonexistence of consequences for noncompliance; and (4) the subject matter of the statutory provision, *e.g.*, elections or notice on charges for driving under the influence.'" 2016 WL 5012505, at *2 (quoting *State v. Raschke*, 289 Kan. 911, 921, 219 P.3d 481 [2009]).

The court in *Walker* found that the legislative context weighed in favor of "shall" being mandatory because within the same statute the clearly permissive "may" is used. 2016 WL 5012505, at *2-3. When the Legislature specifically uses the permissive "may" within the same statute as "shall" the mandatory nature of "shall" "cannot be overlooked." *Szoboszlay v. Glessner*, 233 Kan. 475, 482, 664 P.2d 1327 (1983). Subsections (b) and (c) of K.S.A. 2016 Supp. 60-31a05 specifically state that the court *may* make or extend temporary orders. Subsection (a) specifically states that the court *shall* notify the parties of their right to counsel. The reasoning of the *Walker* is applicable in this case.

The court in *Walker* also found that the second and fourth factors weighed in favor of "shall" being mandatory. 2016 WL 5012505, at *3. This court stated that

> "compliance with shall in this instance has a substantive rather than simply procedural effect on the rights of both parties. Taken with the fourth *Raschke* factor, the context would indicate a legislative intent that neither party should have to stand alone before the court in an emotional situation affecting the personal safety of the petitioner and the competing perceptions of the respondent." 2016 WL 5012505, at *3.

In this case, the transcript shows that the district court did not inform the parties of their right to counsel at the hearing. The district court's failure to inform the parties of their right to counsel necessitates the reversal of the order. See 2016 WL 5012505, at *3.

### WAS THERE SUBSTANTIAL EVIDENCE SUPPORTING THE DISTRICT COURT'S FINDING THAT PRIEBA PROVED, BY A PREPONDERANCE OF THE EVIDENCE, THAT KEELER WAS STALKING PRIEBA?

Keeler argues that there was insufficient evidence supporting Prieba's contention that Keeler was stalking Prieba and that the district court erred in its decision. This court does not need to address this issue.

Reversed and remanded for further proceedings.

8